472 So.2d 560 (1985)
PLAQUEMINES PARISH COMMISSION COUNCIL
v.
DELTA DEVELOPMENT COMPANY, INC. et al.
Nos. 84-CC-1901, 84-CC-1906.
Supreme Court of Louisiana.
June 28, 1985.
*561 Jack Pierce Brooks, John R. Schupp, Randall A. Karr, Broadhurst, Brook, Mangham & Hardy, New Orleans, Ernest R. Eldred, George Clauer, Jerry Davis, Baton Rouge, for relator in No. 84-CC-1901.
Daniel Lund, Harold Carter, Jr., Francis Accardo, Montgomery, Barnett, Brown & Read, New Orleans, J. Minos Simon, Lafayette, Peter Butler, Louis Lauricella, Butler & Hiebe, John McCollam, Marcel Garsaud, Jr., Andrew McCollam, III, Gordon, Arata, McCollam, Stewart & Duplantis, Gene Lafitte, William Pitts, Anne Tate, Liskow & Lewis, New Orleans, Stephen R. Remsberg, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for respondents in No. 84-CC-1901.
Jack M. Weiss, Mary Louise Strong, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for relators in No. 84-CC-1906.
Daniel Lund, Harold Carter, Jr., Francis Accardo, Montgomery, Barnett, Brown & Read, New Orleans, J. Minos Simon, Lafayette, Peter Butler, Louis Lauricella, John McCollam, Marcel Garsaud, Jr., Andrew McCollam, III, Gordon, Arata, McCollam, Stewart & Duplantis, Gene Lafitte, William Pitts, Anne Tate, Liskow & Lewis, New Orleans, for respondents in No. 84-CC-1906.
DIXON, Chief Justice.
In two consolidated applications, the Plaquemines Parish Commission Council, plaintiff-relator, and the Times-Picayune Publishing Corporation, intervenor, asked this court to review the validity of the expansion of a protective order prohibiting public dissemination of information obtained through discovery. We granted writs of certiorari.
Plaquemines Parish Commission Council (PPCC) filed suit against the children of Leander H. Perez, Sr., their spouses and former spouses, and children, for recovery of revenues and mineral interests allegedly taken from Plaquemines Parish by Leander H. Perez, Sr. and his sons, Leander H. Perez, Jr. and Chalin O. Perez, while serving *562 in high public office in the parish between 1924 and 1983.
Leander H. Perez, Sr. served as district attorney of Plaquemines Parish from 1924 through 1960. At the same time he also served as attorney for the Grand Prairie Levee Board, the Buras Levee Board and the Plaquemines Parish Police Jury (predecessor of PPCC). The suit specifically concerns mineral leases granted by the Grand Prairie Levee Board to Delta Development between 1936 and 1951 and by the Buras Levee Board between 1938 and 1964. Leander H. Perez, Sr. represented Delta Development during this period, and derived revenues from Delta. He was also, allegedly, the owner of Delta Development and beneficiary of its mineral royalties. After his retirement, the sons of Leander H. Perez, Sr. continued to administer Plaquemines Parish. Leander H. Perez, Jr. succeeded his father as district attorney in 1960. He also served as attorney for the levee boards and PPCC. Chalin O. Perez succeeded his father as member and president of PPCC in 1967. He served in this office until March 9, 1983. His responsibilities included the administration of all public lands and mineral interests held by PPCC and the levee boards. The suit also names as defendants the grandchildren of Leander H. Perez, Sr. who were beneficiaries of some of the revenues derived from these interests.
PPCC sought in discovery specific information concerning the revenues from the Grand Prairie and Buras leases. Defendants, from the beginning of litigation, sought to prevent disclosure of information to the public. In January, 1984 they requested a protective order limiting the persons who could attend depositions and sealing all depositions and attached documents. The trial court held a hearing and issued a protective order limiting the persons who could attend depositions, prohibiting dissemination of certain discovery materials, but permitting disclosure of information concerning mineral revenues from the disputed leases of public lands.
Defendants filed an application for supervisory writs to the Fourth Circuit Court of Appeal. That court denied writs and remanded to the trial court for consideration of a protective order preventing dissemination of certain information. On remand, defendants requested a "blanket" protective order prohibiting dissemination of all discovery information. The Times-Picayune Publishing Corporation and two of its reporters intervened to oppose this request because such an order would block their ability to report on an important public issue. A hearing was held on May 1, 1984. The trial court denied the request for a "blanket" protective order, but established procedures for designating specific materials as "confidential" on an item-by-item basis. In June defendants sought a protective order, designating certain specific information requested in interrogatories and requests for production of documents as confidential.[1] That information concerned the amount of income received by Delta which was derived from the disputed mineral leases and the amounts of this money distributed to Perez family members. Protection was sought from four interrogatories and two orders to produce.[2] *563 A closed hearing was held on June 11, 1984 and the trial court ordered that the information concerning those defendants who had been public officials, Leander H. Perez, Jr. and Chalin O. Perez, and their immediate families be open, but that information concerning other defendants be deemed confidential and sealed under protective order. Defendants appealed, and in July, 1984 the court of appeal expanded the protective order to include all defendants and all designated materials. That court held that a litigant has no constitutional right of access to discovery materials and that, even if there were such a right, it would be outweighed by defendants' right to privacy concerning their financial records.
The sole question under review by this court is the validity of the partial protective order granted by the trial court and its expansion by the court of appeal.
Application by PPCC
PPCC argues that the court of appeal committed three errors. First it claims that the court of appeal erred in failing to apply the appropriate standard for review of the trial court decision. Second, it found error in the appellate court's decision upholding and expanding of the trial court's protective order. Third, it claims the court of appeal erred in assessing court costs to a political subdivision of the state.
Appropriate Standard of Review
The court of appeal acknowledged in its opinion the discretionary right of the trial court and that an appellate court should not "ordinarily" modify or reverse a trial court in such matters absent an abuse of the trial court's discretion. Plaquemines Parish Commission Council v. Delta Development Company, Inc. et al., 458 So.2d 967, 969 (La.App. 4th Cir. 1984). However, the court of appeal chose not to apply the abuse of discretion standard in this case because the trial judge had orally suggested the possibility of appellate review.
The United States Supreme Court has ruled that:
"... The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery....
.....
... It is sufficient ... that the highest court in the state found no abuse of discretion in the trial court's decision to issue a protective order ..." Seattle Times Co. v. Rhinehart, ___ U.S. ___, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984).
We need not adjudicate the "appropriate standard of review" of the court of appeal, a matter which is sometimes helpful in deciding factual issues. Here, the issues *564 are legal issues. The court of appeal did not upset the district court on factual matters, but on the correct selection and application of the governing rules of law.
Affirmance and Expansion of the Protective Order by the Court of Appeal
A court has the authority to grant a protective order under the provisions of C.C.P. 1426 "for good cause shown" if justice requires such an order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense."
At the hearing on May 1, 1984 evidence was allegedly presented and the trial court granted a general protective order for specific materials designated confidential by the litigants. However, no transcript was made of this hearing, and no evidence is before this court.[3]
At the hearing on June 11, 1984 at which a protective order was granted for information concerning the grandchildren, no evidence was presented to establish good cause or a possibility of embarrassment. Defendants relied on legal arguments based primarily upon Seattle Times Co. v. Rhinehart, supra. The trial judge was also influenced by that case, which he understood to mean that:
"... the abuse of the legal process, that is, the possibility or probability of using material obtained through discovery which may be irrelevant or inadmissible in a lawsuit ... and the use of that information through dissemination prior to trial, that that is sufficient grounds for the court to grant a protective order, regardless of whether or not other good cause may be shown."
On this basis the trial court granted the partial protective order. However, that court did not think this rationale justified the same protection of those defendants who had been public officials, and their immediate families. Those persons were denied a protective order.
The issue is whether C.C.P. 1426 is satisfied when there is no evidence of good cause in the record of the court. The only "evidence" in the record consists of several newspaper clippings of articles concerning the Perez family which were attached to defendants' briefs. This court has ruled that protective orders:
"... like all rulings, orders, decrees and judgments issued by courts of law must be based upon record evidence. Orders of court, ... must be predicated upon evidence introduced into the record, affording ample opportunity to those affected thereby to contradict, rebut and otherwise support their position in the matter...." Economy Carpets Manufacturers and Distributors, Inc. v. Better *565 Business Bureau of Baton Rouge, La., Inc., 319 So.2d 783, 786 (La.1975).[4]
This court has held that the failure of the defendant to show prejudicial effect from the denial of his request for closure (of a pretrial hearing) was sufficient grounds for upholding that denial. State v. Kent, 391 So.2d 429 (La. 1980). See State v. Birdsong, 422 So.2d 1135, 1137 (La.1982), where this court suggested a balancing approach:
"... There are competing interests. There is a countervailing public policy which is a strong societal interest in public trials...."
This societal interest is provided for in the Louisiana Constitution, Art. 1, § 22:
"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."
Although discovery devices in civil cases are different from trials or pretrial proceedings in criminal cases, they are nevertheless authorized by procedural statutes, carried out under the authority and supervision of the court, and constitute a part of a civil case.
The United States Supreme Court, in Seattle Times Co. v. Rhinehart, supra, 104 S.Ct. at 2209, reaffirmed the necessity of showing good cause for protective orders. In that case the information requested concerned the membership lists and lists of contributors to a religious organization which was a party in the case. The members and contributors were private individuals who were not parties to the case. It was they who would have suffered embarrassment had the information been released. In the instant case, those defendants who were denied a protective order by the trial court were public officials. By virtue of their undertaking public office, they assumed the risk of a lower degree of privacy. New York Times Co. v. Sullivan, 376 U.S. 254, 268, 84 S.Ct. 710, 719, 11 L.Ed.2d 686 (1964); Time, Inc. v. Hill, 385 U.S. 374, 388, 87 S.Ct. 534, 542, 17 L.Ed.2d 456 (1967). As public officials they assumed a fiduciary duty to the public of Plaquemines Parish in the administration of the lands, mineral interests and revenues of the parish. The documents at issue concern the revenues from public lands and mineral interests which these defendants were charged to administer and the distribution of those monies to members of their extended family. The PPCC, representing the people of Plaquemines Parish and at taxpayer expense, brought this suit to obtain information as to the extent of such revenues and for the return of the revenues involved.
The reversal of the partial denial of the protective order for the defendants who were public officials and their immediate families without showing of good cause as required by law was error on the part of the court of appeal.[5]
Intervention by Times-Picayune
Intervenor, the Times-Picayune Publishing Corporation, asks the court to review the constitutional rights of the press and the public to discovery materials disclosing pertinent facts concerning allegedly misappropriated *566 public assets and the "right of privacy" claimed by those defendants who were formerly public officials in Plaquemines Parish.
The United States Supreme Court acknowledged a common law right of access to judicial records in Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). The United States Supreme Court recognized and affirmed a concomitant right under the First Amendment of the United States Constitution in Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 824 n. 8, 78 L.Ed.2d 629 (1984); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982); and Richmond Newspapers v. Virginia, 448 U.S. 555, 575, 100 S.Ct. 2814, 2826, 65 L.Ed.2d 973 (1980). Richmond Newspapers v. Virginia, supra at 580 n. 17, 100 S.Ct. at 2829 n. 17, implied that this right applies to civil as well as criminal proceedings. The United States Supreme Court has found this right of access to materials generated in pretrial proceedings as well as to trial records. Waller v. Georgia, ___ U.S. ___, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984); Press-Enterprise v. Superior Court, supra, 104 S.Ct. at 824-26.
The First Amendment to the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech, or of the press." The original proposal of Madison which formed the basis for this amendment read in part:
"The people shall not be deprived or abridged of their right to speak, to write or to publish their sentiments; and the freedom of the press, as one of the great bulwarks of liberty, shall be inviolable." 1 Annals of Cong. 434 (cited in New York Times Co. v. United States, 403 U.S. 713, 716, 91 S.Ct. 2140, 2142, 29 L.Ed.2d 822 (1971) (Black, J. concurring).
The freedom of the press to report matters of public interest, and especially trial proceedings, is so great that it outweighs almost any governmental restraints.
"... Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity...." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).
The government "thus carries a heavy burden of showing justification for the imposition of such a restraint." Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971). A state law imposing sanctions for the publication of the name of a rape victim obtained from judicial records has been held unconstitutional. Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 491, 95 S.Ct. 1029, 1044, 43 L.Ed.2d 328 (1975).
"... a public benefit is performed by the reporting of the true contents of the records by the media. The freedom of the press to publish that information appears to us to be of critical importance to our type of government in which the citizenry is the final judge of the proper conduct of public business." Id. at 495, 95 S.Ct. at 1046.
Courts have consistently recognized a general right to "inspect and copy public records and documents." Nixon v. Warner Communications, Inc., supra, 435 U.S. at 597, 98 S.Ct. at 1311. In the cases of alleged misconduct of public officials, courts have recognized the increased importance of such rights.
"... the press serves ... as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve." Mills v. Alabama, 384 U.S. 214, 219, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484 (1966).
The court had further elaborated this principle in Garrison v. Louisiana, 379 U.S. 64, 74-75, 77, 85 S.Ct. 209, 215-216, 217, 13 L.Ed.2d 125
"... speech concerning public affairs is more than self-expression; it is the essence of self-government.... The public officials rule [of New York Times v. Sullivan] *567 protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant...."
The United States Supreme Court upheld the right of the press to criticize public officials without liability even when the information published was inaccurate and defamatory. New York Times v. Sullivan, supra, 376 U.S. at 273, 84 S.Ct. at 722.
The upholding of these rights of the public and press by the United States Supreme Court has not been exclusively limited to discussion of public officials. The court has found the line between the public and private sector increasingly blurred. It has found private individuals and corporations performing functions and exercising powers which traditionally had been the domain of government.
"... Our citizenry has a legitimate and substantial interest in the conduct of such persons, and freedom of the press to engage in uninhibited debate about their involvement in public issues and events is as crucial as it is in the case of `public officials.' ..." Curtis Publishing Co. v. Butts, 388 U.S. 130, 163-64, 87 S.Ct. 1975, 1995-96, 18 L.Ed.2d 1094 (1967) (Warren, C.J. concurring).
The Court has gone so far as to state:
"If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not `voluntarily' choose to become involved. The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior anonymity or notoriety...." Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 43, 91 S.Ct. 1811, 1819, 29 L.Ed.2d 296 (1971).
Two classes of defendants claim, against the rights of the public and press, a right to preservation of their privacy: those defendants who were public officials and those who were not. Public officials "are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their official capacity." Nixon v. Administrator of General Services, 433 U.S. 425, 457, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977). However, public officials do, by virtue of undertaking public office, surrender "the privacy secured by law for those who elect not to place themselves in the public spotlight." Id. at 455, 97 S.Ct. at 2796. The Court found no right of privacy extended to documents which the claimant had never seen or to those which had already been disclosed to the public. Nixon v. Administrator of General Services, supra at 459, 97 S.Ct. at 2798.
A right to privacy is not specifically mentioned in the United States Constitution. Courts have found a limited right to privacy in some cases, generally those involving contraception, abortion, family relationships, child rearing and education. Paul v. Davis, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). The law has not affirmed a right of public officials to financial privacy. In recent history the voluntary and involuntary disclosure of personal finances has increased and begun at the moment a person declares himself or herself a candidate for election to public office.
The Louisiana Constitution of 1974, Art. 1, § 5, provides:
"Every person shall be secure in his person, property, communications, houses, papers and effects against unreasonable searches, seizures or invasions of privacy."
Only "unreasonable" invasions of privacy are prohibited, such as entry into a person's home without a warrant. This article does not prevent the surrender of information in discovery proceedings nor protect it from view when surrendered.
This court has defined the limits of the right to privacy: "the right of privacy is not absolute; it is qualified by the rights of others ... The right of privacy is also *568 limited by society's right to be informed about legitimate subjects of public interest." Parish National Bank v. Lane, 397 So.2d 1282, 1286 (La.1981).
Thus the courts have affirmed a constitutional right of the press to access to information and freedom to publish it, even when balanced against the right of individuals to privacy. When legal rights and juridical values come into conflict, a court must attempt to balance the competing interests to achieve a harmonious result, as did the United States Supreme Court in Seattle Times Co. v. Rhinehart, supra. It held that First Amendment interests must be balanced against privacy interests on a case by case basis. In that case the protective order in question concerned the identities of individuals who were not parties to the case, but who were members of and contributors to a religious organization. Evidence of good cause for the order was well documented in the record. The Court therefore found the persons should be protected from the dissemination of the information. The Court determined that, as with other forms of speech, some appropriate "time, place and manner" restrictions could be consistent with the First Amendment. It set forth a two part test:
"... whether the `practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether `the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.'" Seattle Times Co. v. Rhinehart, supra, 104 S.Ct. at 2207.
In Seattle Times the United States Supreme Court held that protective orders are subject to scrutiny as violative of the First Amendment. Protective orders infringing upon First Amendment rights must serve an important and legitimate governmental interest and be no broader than necessary to protect that interest.
In the case before us the rights of the press to publish and of the public to know the information in question are strong. The privacy interests of the defendants are limited. Those defendants who were public officials have a diminished right to privacy, especially concerning information which had to do with their conduct in the administration of their office and with revenues derived therefrom. The privacy rights of those defendants who were not public officials is greater, but their chances of embarrassment are less because they did not participate in the acquisition of the properties, and because some of the information involved has already been made public.[6]
We specifically recognize that it is important to a free people that personal financial information not be made public except to satisfy important rights of others or an overriding public interest in the disclosure. We also recognize that the importance to the government, the lawmakers and the voters of the information sought here can hardly be overemphasized. The amount of money received by private persons from mineral interests on public lands is independently relevant and may be determinative in deciding issues in this case. Furthermore, it is important in assessing present and future safeguards of the irreplaceable natural resources of the state. Therefore, the privacy interests of the individual defendants in this case, which would permit them to seal from public view the information sought in this litigation, are overwhelmed by the legitimate needs of the people to know the disposition of revenues from public lands.
The trial court order of June 11, 1984 exempted from protective order information relating to Judge Perez, Sr., Leander, Jr. and Chalin, and their immediate families, as immediate families are defined by R.S. 42:1102(13) (Ethics for Public Officials). According to the statute, "immediate families" include children, brothers, sisters and parents. Thus the Perez family members who do not come under this are the children of daughters of Judge Perez. *569 Grandchildren who are children of Leander, Jr. and Chalin are not protected. While 42:1102 was not in effect until April 1, 1980, it is apparent that the trial judge looked to the Ethics for Public Officials statute as a workable definition to determine who would and who would not be exempted from his protective order; he used the Ethics for Public Officials act by analogy, and not as if it established a legal standard applicable to this case.
The court of appeal then held all information as to all defendants to be protected.
Intervenor, the Times-Picayune, asks reinstatement of the trial court order, protecting only those who are not public officials or their immediate families, that is, only the grandchildren who are children of the Perez daughters.
Plaintiff PPCC argues there was never good cause shown for any protective order. It asks this court to reverse both the Fourth Circuit and the trial court and deny any protective order.
There is some argument that the failure of PPCC to appeal cloaked the district court order protecting the daughters of Judge Perez and their children. The issue is peripheral to the important principles to be decided, and we will not entertain it.[7]
For these reasons the rulings of the court of appeal are reversed; the judgment of the district court is reinstated at the cost[8] of defendants, and the case is remanded to the district court.
SHORTESS, J. Ad Hoc,[*] concurs and will assign reasons. (par JAD)
LEMMON and MARCUS, JJ., dissents and assigns reasons.
BLANCHE, J., dissents and will assign reasons.

APPENDIX

1. Motion to Recall Writs or Defer Action
Defendants moved that this court dismiss this application as moot because the trial court sustained exceptions and dismissed the case on February 14, 1985, or that we defer action on this application until the case on the merits has been appealed.
The application is not, at present, moot. The judgment of the district court has been appealed suspensively.
Cases involving access to judicial records and proceedings have been litigated after the conclusion of litigation on the merits. Globe Newspaper v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Richmond Newspapers v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); Publicker Industries v. Cohen, 733 F.2d 1059 (3d Cir. 1984); United States v. Cianfrani, 573 F.2d 835 (3d Cir.1978). Important First Amendment rights of the public and press are at stake in this application. These issues do not terminate with the conclusion of litigation on the merits.
The judgment of the trial court is not final. The application raises matters of *570 importance which might recur. Therefore this motion is denied.

2. Motion to Exempt Documents from Protective Order
PPCC moved to exempt from protective order documents concerning interests conveyed to itself by Mary Ellen Sheehan Perez in an agreement of partial release. This agreement was concluded on February 4, 1985. It is thus subsequent to the record before this court and not contained in the record. We have decided that no good cause has been shown for any protective orders. Our conclusion eliminates any need to exempt any documents.

3. Motions to Intervene
Mary L. Perez and Robert H. Perez, children of Mary Sheehan Perez and grandchildren of Leander H. Perez, Sr., moved to intervene. Movers claim ownership of mineral interests donated to them by their mother in 1958 and 1964. Their mother entered into an agreement of partial release in which she agreed to return her mineral interests to PPCC and PPCC agreed to dismiss her as a party to the litigation. Her children allege that mineral interests owned by them are included among those she promised to return to PPCC and to which PPCC is attempting to take title. They ask this court to prevent inaccurate recordation of title by PPCC and, if recordation is allowed, to affirm their ownership of said interests.
Under C.C.P. 1091 "a third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more parties thereto..."
Intervenors take the proceedings as they find them. C.C.P. 1094. The issue of ownership of these interests is not before this court; only the issue of the protective order granted as to discovery information.
The motion to intervene is granted; the matter is remanded to the district court.
SHORTESS, Justice Ad Hoc, concurring.
I agree that the order of the trial court should be reinstated but on somewhat different grounds than the majority opinion. In my opinion the trial court did not abuse its discretion in fashioning this partial protective order. I do not think evidentiary hearings must be required by law in all cases where great discretion is vested with the trial court, especially in pretrial matters.
Seattle Times affirmed a protective order issued under practically a verbatim statute to our LSA-C.C.P. art. 1426, agreeing that a showing of good cause was made to the trial court. Good cause was shown by affidavits attached to the motion for protective order. No evidentiary hearing was held. Therein, the court said, at 104 S.Ct. 2209:
The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery.23 The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.
Further, the footnote referred to in this quotation states:
23 In addition, heightened First Amendment scrutiny of each request for a protective order would necessitate burdensome evidentiary findings and could lead to time-consuming interlocutory appeals, as this case illustrates. See, e.g., Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F.Supp. 866 (ED Pa.1981).
In my opinion, the trial court found good cause only after considering the balancing test requiring by Seattle Times when it issued the order as to the private defendants but denied it as to the public defendants.
LSA-C.C.P. art. 1426 protects against "annoyance, embarrassment, oppression, or undue burden." The trial court obviously felt that public dissemination of the pretrial discovery in question would cause embarrassment to the private defendants because detailed financial information about them is disclosed therein.
However, the trial court also felt that under the same balancing test, Chalin Perez' *571 and Leander Perez, Jr.'s status as public officials simply could not afford them protection. I agree completely with the majority opinion's treatment of this issue.
I have some problem with the trial court's exclusion of their "immediate families" from the order but do not feel that it abused its discretion in this regard either.
BLANCHE, Justice (dissenting).
At issue is the right of a newspaper to publish information obtained by private litigants in compliance with discovery procedures in preparation for trial. The newspaper, intervenor, waves the First Amendment flag in justification of their right to publish the discovery material. The U.S. Supreme Court in Seattle Times v. Rhinehart, ___ U.S. ___, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), held that a protective order which preserves the confidentiality of information produced in pre-trial discovery issued under a state statute such as our discovery statute, does not offend the First Amendment. The opinion of the Fourth Circuit Court of Appeal was absolutely correct in its determination that neither the U.S. Constitution nor the Louisiana Constitution afford the Plaquemines Parish Council or the Times-Picayune any First Amendment right of access to information made available in response to pre-trial discovery procedures.
The majority also finds that the record does not support a finding of good cause by the trial court. This writer finds that by virtue of the very nature of the information sought to be published good cause is shown to protect defendant's right of discovery.
It seems unfair to permit the news media to put in the street these defendant's income tax returns, financial records and other property interest of their family which the trial judge found to be confidential when it may not be even remotely relevant to the issues in the case or admissible at trial. After a hearing the trial judge found that it was a serious question as to whether or not the case was fairly reported in the papers and found that "where there is a possibility of abuse and the use of that information through discrimination prior to trial" good cause is shown. This finding should have been accorded great weight and protecting the confidentiality of the matters discovered was not an abuse of discretion. Protective orders such as the one in this case not only protect a litigant's right to privacy but more importantly supports the interest of the judiciary in maintaining the integrity of its discovery procedures. Seattle Times v. Rhinehart, supra.
I therefore, respectfully submit that giving the newspaper the right to exploit discovery material deemed confidential and obtained in preparation for trial is an abuse of the discovery process even as to public officials. Furthermore, its unfairness is made even more manifest when it is considered that since the above rulings the trial court has dismissed plaintiff's suit on a plea of prescription and the case may never come to trial.
MARCUS, Justice (dissenting).
I dissent for reasons assigned by Justice LEMMON.
LEMMON, Justice dissenting.
The codal articles pertaining to discovery in civil proceedings allow extensive intrusion into the private affairs of litigants and of third parties. In recognition of the fact that some information discovered for purposes of preparation for trial may never be admitted into evidence at a public trial and may invade privacy and other interests of the litigants or the third parties, the articles further authorize protective orders (although the courts have inherent equitable power to grant such orders) to protect the litigants or the third parties from abuse or injustice.
The issue here is not whether defendants' personal financial records are subject to discovery. Plaintiff has been furnished all of the information that it has requested. The problem is that plaintiff wants to publish this otherwise private information about defendants' personal financial *572 records (which defendants suggest is for the purpose of inflamming the public and prejudicing their right to a fair trial). Therefore, the issue at this pretrial discovery stage of this litigation is whether any party, and particularly these defendants who are public officials, retain any right of privacy in their personal financial records between the time the records are produced in response to compulsory discovery and the time that the records become public information by introduction into evidence at the trial after being subjected to judicial scrutiny.[1]
Prior to the institution of this suit, defendants apparently enjoyed a right of privacy in this information. Neither plaintiff nor the press had any apparent right of access to this private and personal financial information. Defendants, of course, did not initiate the litigation. However, when plaintiff filed a facially valid suit which was not otherwise subject to dismissal, the mandatory discovery rules (which are a matter of legislative grace) accorded plaintiff the right to discover any unprivileged information which is relevant to the subject matter of the action or which might reasonably lead to the discovery of admissible evidence. La.C.C.P. Art. 1422. But the fact that essentially private information is subject to compulsory discovery does not make it public information. There is no general right of public access to private information obtained through discovery in preparation for trial. Seattle Times Co. v. Rhinehart, above. A party's right of privacy may be maintained by means of a protective order issued to avoid annoyance, embarrassment, oppression or undue burden or expense or for other good cause. La.C.C.P. Art. 1426.
The information obtained by discovery may be used by the opposing party to prepare for trial and to attempt to introduce as evidence at the trial. Such information, however, may not be used to infringe on a party's right to a fair trial when publication of the information may inflame the public and the prospective jurors or may possibly prejudice defendants in any other manner. When such possible prejudice may result from disclosure or from unfair publication of the information, then the party retains a right of privacy in that information, inasmuch as the public does not have an absolute right to know information which has not yet (and may never be) introduced at trial and which would be completely private and personal information but for the pendency of the proceedings.
The trial court in this case ruled that the right of privacy of some of the defendants should be maintained by means of a protective order, thereby implicitly finding an unstated good cause for the order. The court, however, exempted the public officials and their immediate families from the order on the basis of La.R.S. 42:1101, the Code of Governmental Ethics.[2] Apparently satisfied that there was good cause for the protective order in favor of certain litigants, plaintiff did not seek review thereof.
The critical issue is therefore narrowed down to a question of whether public officials who are accused of wrongdoing in a civil action lose the right to privacy enjoyed by other citizens simply because the accusations are made. Here, wrongdoing and corruption have not yet been proved and are presently only allegations in a lawsuit which has been dismissed on the basis of prescription.[3]
*573 A public official who misuses the public trust for personal gain should be dealt with severely, either by being removed from office, by being required to return illegally obtained funds, by criminal proceedings, or by other methods. Nevertheless, a public official is just as entitled to a fair trial as any other citizen of the United States. A public official also is entitled to some rights of privacy, perhaps not from investigation, but at least from prejudicial publications of investigative information while litigation is pending.
NOTES
[1] The court has no pleading before it requesting the protective order.
[2] "INTERROGATORY NO. 5: Identify and describe each and every document which created, evidences, describes, or terminated any of the relationships described in your answer to Interrogatory No. 4. [NOTE: Interrogatory No. 4 requested a description of any relationships that existed between Delta and 29 named persons including the individual defendants.]

INTERROGATORY NO. 20: Specify the amount, date and payor of all monies or things of value received by you as a result of the leases, subleases and assignments and any and all agreements relating thereof, including but not limited to bonuses, rentals, royalty payments, overriding royalty payments, production payments, commissions, fees or other payments of money. [NOTE: This interrogatory concerned leases from PPCC's ancestors, the Board of Commissioners for the Buras and Grand Prairie Levee Districts, to Delta.
INTERROGATORY NO. 21: If you have paid, delivered, distributed, transferred or assigned any of the monies or things of value received by you and identified in your answer to Interrogatory No. 20 to any of the persons identified in Interrogatory No. 4, specify the amount, date and transferee or recipient thereof, describe the reason therefor, and identify and describe every document which evidences or describes such act.
INTERROGATORY NO. 24: If your answer to the preceding Interrogatory is affirmative, identify and describe such interest, the person for whom you hold such interest and any documents which set forth or specify the interest held or the capacity in which you hold such interest. [NOTE: The preceding Interrogatory No. 23, asked whether Delta held any interest in the levee board leases or subleases or assignments thereof, or in any other property given or received as consideration therefor, as agent, nominee, trustee or in any other representative capacity for any other person.]
REQUESTS FOR PRODUCTION OF DOCUMENTS
REQUEST NO. 2: Unless otherwise produced in response to Request No. 1 or in response to any of those certain 74 interrogatories served on you contemporaneously herewith by plaintiff, produce the following documents relative to Delta Development Company, Inc., a Louisiana corporation, and Delta Development Company, Inc., a Delaware corporation:
* * * * * *
c) All portions of any financial reports, journal books, ledger books, checks and check stubs containing any entries showing receipts of any revenue attributable in whole or in part to the leases identified in paragraphs 17, 31 and 52 of the petition filed in this lawsuit, and any subleases, assignments or amendments thereof.
d) All portions of any financial reports, journal books, checks and check stubs containing any entries showing disbursement of any revenue to any of the individuals listed in Interrogatory No. 4 of those certain 74 Interrogatories served upon you contemporaneously herewith by plaintiff, attributable in whole or in part to the leases identified in paragraphs 17, 31 and 52 of the petition filed in this lawsuit, and any subleases, assignments or amendments thereof."
[3] Upon the argument in this court in February, 1985, the transcript of the May 1, 1984 hearing was requested; the court was informed that it was part of the record, but subsequently this court was informed by one lawyer for the defense that his "colleagues had informed" him that they had "been unable to get the hearing transcribed in time to make that transcript part of the writ application ..." Following the second argument on June 17, 1985, the court ordered the clerk of the district court and the court reporter to deliver to us the transcript. The court will pursue the matter, but has received no assurance of prompt compliance.

If the transcript is filed here we will consider it, if the judgment has not become final. However, from recitations in defendants' brief, it appears that there was no evidence adduced at that hearing to show that defendants needed protection from "annoyance, embarrassment, oppression, or undue burden or expense." C.C.P. 1426. Defendants represent to us that the district court, on May 1, 1984, "received documentary evidence and heard testimony which substantiated defendants' claims "that members of the parish council had disseminated discovery materials" directly to the news media; that the reporting was overreaching, biased and unfair;" and was an intrusion on the rights of privacy of the defendants.
The privacy rights of the defendants are discussed later in this opinion. Overreaching, bias and unfairness of the news media do not justify requiring secrecy in judicial proceedings. Members of the parish council, guardians of the parish property, have a particular duty to learn what former officials receive from mineral production on parish lands, to discuss it, and, perhaps, to take action on it.
None of the reasons advanced by defendants as having been established at the May 1, 1984 hearing constitute good cause to prohibit the disclosure of the information furnished in this case.
[4] The opinion continues, stating: "Surely it is elementary that photographs of signs and newspaper clippings attached to briefs and responses, or sketchy reference to representations made by counsel in oral argument, are not evidence....." Id. at 786.
[5] Not only was there no evidence in the record that denial of a protective order would result in embarrassment to the defendants, but much of the information which defendants seek to protect has already been disclosed to the public through publication. That which would seem most embarrassing, such as the history of how Leander H. Perez, Sr. obtained the leases from the levee boards and set up various corporations, as well as the substantial increases in his yearly income, has been documented and published in two biographies of Leander H. Perez and in several articles. See Glen Jeansonne, LEANDER PEREZ, BOSS OF THE DELTA (Baton Rouge: LSU Press, (1977); James Conaway, THE LIFE AND TIMES OF LEANDER PEREZ (New York: Knopf, 1973); Richard A. Smith, Oil, Brimstone and Judge Perez, 57 FORTUNE 143-59 (1958); Lester Velie, Kingfish of the Dixiecrats, 124 COLLIER'S 9-13 (12/17/49) and 21-44 (12/24/49).
[6] See supra note 5.
[7] The author of the opinion believes that good cause has not been shown for any protective order, but a majority of the court does not hold that view.
[8] The court of appeal erroneously cast PPCC with costs.

The law states that:
"A. Except as provided in R.S. 13:5112 and as hereinafter provided, neither the state nor any parish, municipality, or other political subdivision, public board, or commission shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state or any such parish, municipality, or other political subdivision, board or commission, in any court of this state or any municipality of this state, including particularly, but not exclusively, those courts in the parish of Orleans and the city of New Orleans. This Section shall have no application to stenographers costs for taking testimony ..." R.S. 13:4521.
R.S. 13:4521 prohibits casting the Parish Council for costs. R.S. 13:5112 permits, in suits against the state agency, costs to be cast against the agency.
The PPCC, as a political subdivision of the state and as plaintiff in the instant litigation, should not have been cast for costs in this case. The court of appeal thus erred in assessing costs against the PPCC.
[*] Shortess, Justice Ad Hoc, served in place of Watson, J., recused.
[1] An affirmative answer to the general question has been provided by Seattle Times Co. v. Rhinehart, ___ U.S. ___, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).
[2] The Code, even if applicable, provides for maintaining the confidentiality of private information about public officials during the investigatory stages of the proceeding, apparently recognizing as a good cause the indisputable fact that investigatory information about public officials is almost always inflammatory and possibly prejudicial to the public official's right to fairness in judicial or quasi judicial proceedings. See R.S. 42:1141 D(12).
[3] Plaintiff's appeal from the dismissal on the basis of prescription is presently pending in the court of appeal.