696 So.2d 562 (1997)
CAPITAL CITY PRESS and Mike Dunne
v.
EAST BATON ROUGE PARISH METROPOLITAN COUNCIL, Greater Baton Rouge Metropolitan Airport Authority and Don Nijoka.
No. 96-C-1979.
Supreme Court of Louisiana.
July 1, 1997.
*563 Lloyd Joseph Lunceford, Taylor, Porter, Brooks & Phillips, Baton Rouge, for applicant.
Dawn N. Guillot, Michael Elven Ponder, Baton Rouge, for respondent.
Larry Michael Roedel, John Dunbar Koch, David Alva Woolridge, Jr., Baton Rouge, for amicus curiae Louisiana Press Association.
VICTORY, Justice.
We granted this writ to determine whether the applications and resumes of applicants for the position of Assistant Director of Aviation of the Greater Baton Rouge Metropolitan Airport Authority are accessible by the press under Louisiana law. After reviewing the record, we hold that such applications and resumes are accessible.

FACTS AND PROCEDURAL HISTORY
After placing a notice in newspapers throughout the state advertising the positions of Director of Aviation and Assistant Director of Aviation of the Greater Baton Rouge Metropolitan Airport Authority, the East Baton Rouge Parish Metropolitan Council (the "Metro Council") received 118 resumes for these positions. Eleven of these applications were for the position of Assistant Director only, the other 107 were for both Director and Assistant Director. Mike Dunne, a reporter for the Baton Rouge Advocate newspaper, requested access to the following records: (1) all documents related to those applying for the positions of Director of Aviation or Assistant Director of Aviation; and (2) any lists created by Don Nijoka, the Metro Council's chief administrative officer, or his staff listing the names, addresses and any other information concerning applications for those positions.
On April 18, 1995, the Metro Council responded that it would produce all resumes of those selected as finalists, and, as to the remaining applicants, it would produce the resumes of the applicants who gave their consent to the disclosure. On April 19, 1995, the Metro Council chose the then-Assistant Director to fill the position of Director, leaving only the position of Assistant Director to be filled. After attempting to contact the remaining applicants to get their permission to disclose the requested information, the Metro Council provided Dunne with the names and resumes of all applicants who had given their permission, resulting in the disclosure of 85 of the 118 resumes submitted.
Mike Dunne and Capital City Press, publisher of the Baton Rouge Advocate, then filed a petition for injunction or writ of mandamus pursuant to the Public Records Law, La. R.S. 44:1, et seq., seeking access to the names and resumes of the remaining applicants for the Director and Assistant Director positions. After a trial, the trial court granted plaintiffs' request for a writ of mandamus and ordered defendants to produce a list of the names and resumes of all applicants for the position of Director, which included those applicants who had applied for the jobs of both Director and Assistant Director. However, the trial court denied plaintiffs' request regarding applications for the position of Assistant Director only, finding that the privacy rights of those individuals outweighed the public's right to know. The trial court also denied plaintiffs' request for attorney fees under La. R.S. 44:35.
Plaintiffs appealed and the first circuit court of appeal affirmed. Capital City Press and Mike Dunne v. The East Baton Rouge Metropolitan Council, et al., 95-CA-1345 (La.App. 1st Cir. 6/28/96), 676 So.2d 793. *564 Both courts relied on the case of Gannett River States Publishing v. Hussey, 557 So.2d 1154 (La.App. 2nd Cir.), writ denied, 561 So.2d 103 (1990), and held that in balancing the competing interests of the public's access to public records and the individual's right to privacy, the position of Assistant Director was a subordinate position to the position of Director, and thus the privacy interest of the applicants for that position outweighed the public's right to know. 676 So.2d at 798. We granted a writ to consider the correctness of this ruling. Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979 (La.11/15/96), 682 So.2d 745.

DISCUSSION

Disclosure of applications for employment
Under Louisiana law, any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of a public record "except as otherwise provided in this Chapter or as otherwise specifically provided by law." La. R.S. 44:31. Any person who has been denied access to a public record may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney fees, costs and damages. La. R.S. 44:35 A. The public's right of access to public records is also found in the Louisiana Constitution, Article 12, Section 3, which states in part that "[n]o person shall be denied the right to ... examine public documents, except in cases established by law."
With regard to Article 12, Section 3, we have held as follows:
The right of the public to have access to the public records is a fundamental right, and is guaranteed by the constitution. La. Const. art. 12, § 3. The provision of the constitution must be construed liberally in favor of free and unrestricted access to the records, and that access can be denied only when a law, specifically and unequivocally, provides otherwise. Id. Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public's right to see. To allow otherwise would be an improper and arbitrary restriction on the public's constitutional rights. (Emphasis added.)
Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984). Similarly, with regard to the statutory right of the public to examine public documents, we held:
The legislature by the public records statutes sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. There was no intent on the part of the legislature to qualify, in any way, the right of access. [Cites omitted.] As with the constitutional provision, the statute should be construed liberally, and any doubt must be resolved in favor of the right of access.
Id. at 936-937; see also Dutton v. Guste, 395 So.2d 683 (La.1981).
There is no dispute that the applications for the positions of Director and Assistant Director are "public records" under La. R.S. 44:1 as they are "documentary materials ... having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, ... work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state ... or order of any public body."[1] La. R.S. 44:1 A(2) *565 provides that exceptions may be made "in this Chapter or as otherwise specifically provided by law" to the public records doctrine, and in fact La. R.S. 44:1 et seq. contains several exceptions.[2] La. R.S. 44:11 contains an exemption for certain items in the personnel records of a public employee, including unlisted home telephone numbers, and home telephone numbers and addresses when the employee has requested that such information be kept confidential. Furthermore, the medical records of persons covered by the State Employees Group Benefits Program are exempted from the public records law. La. R.S. 44:12.
Accordingly, under La. R.S. 44:1 et seq. and La. Const. Article 12, § 3, applications for public employment are "public records," not subject to any specific exemption established by law that would shield them from disclosure to the public. However, defendants claim, and the lower courts agreed, that the applications for Assistant Director are protected by the individual's constitutional right to privacy found in Article 1, Section 5 of the Louisiana Constitution which states that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures or invasions of privacy."
The court of appeal applied the balancing test set forth in Gannett, supra, in considering whether the resumes of the applicants for Assistant Director should be disclosed. In Gannett, the press sought all records held by the mayor of Shreveport relating to applicants for the position of chief of the Shreveport Fire Department. The court first determined whether the applicants had a reasonable expectation of privacy in the documents requested. The court found that the applicants had a subjectively reasonable expectation of privacy because the "applicant's security in his current position will be undermined if the fact that he seeks a position elsewhere is known to his current employer." 557 So.2d at 1159. Likewise, the city had an interest in keeping the applications private because the pool of applicants would be reduced if the potential applicants were aware that the applications would be made public. Id.
After finding that there was a "significant privacy interest in the record sought," the court balanced the privacy interest against the public disclosure interest. Id. The court found that because "[e]xpectations of privacy diminish the higher one progresses or aspires in the hierarchy of government" and because the job of fire chief was an important job, as opposed to a mid-level job, "[a]ny expectation of privacy which the instant applicants may have had in their applications was not objectively reasonable under the circumstances" and "must yield to the public's `right to know.'" Id.
In the case at bar, the court of appeal found that the applicants for Assistant Director had a reasonable expectation of privacy for the same reasons found in Gannett, e.g. present employment security and need for large pool of applicants. However, the court found that because the job of Assistant Director was subordinate to the Director, had lesser responsibility and involved no independent judgment or individual discretion, "it does not involve such high level authority and policy making activities by the individual that his or her expectation of privacy is outweighed by the public's interest in access to applications for this position." 676 So.2d at 798.
However, for the reasons that follow, we hold that a balancing test is not appropriate under these circumstances. Both the constitutional and statutory right of access to public records provide that this right can only be denied "in cases established by law" and "as otherwise provided in this Chapter or as *566 otherwise specifically provided by law." La. Const. Art. 12, § 3; La. R.S. 44:31, 44:1 A. Our Civil Code defines "law" as "legislation or custom."[3] La.C.C. art. 1. We have held that access to public documents can only be denied "when a law, specifically and unequivocally, provides otherwise." Title Research Corp. v. Rausch, supra at 936. This interpretation is consistent with the intention of the drafters of the Louisiana Constitution that the right of access to public documents could only be denied if a specific statute so provided.[4] Therefore, it is significant that the legislature has not provided for an exception for employment applications in Louisiana's public records law. The Metro Council's concern that the number of applications will be reduced if the applicants are subject to access by the public is a matter of public policy and is left to the discretion of the legislature.
We also must consider the applicant's privacy concerns to determine whether they rise to the level of rights that are constitutionally protected. The right to privacy in Louisiana has been described as "the right to be `let alone,' ... and to be free from `unnecessary public scrutiny.'" DeSalvo v. State, 624 So.2d 897, 901 (La.1993) (cites omitted). We have discussed the right to privacy in the context of disclosure of facts about an individual or his property on several occasions. In Parish Nat. Bank v. Lane, 397 So.2d 1282, 1286 (La.1981), we described the right of privacy in this context as follows:
The right of privacy protects varied interests from invasion. Among the interests protected is the individual's right to be free from unreasonable intrusion into his seclusion or solitude, or into his private affairs.... However, the right to privacy, like other personal rights, may be lost in many ways-by express or implied waiver or consent, or by a course of conduct which prevents its assertion. Moreover, the right is not absolute; it is qualified by the rights of others....
The right of privacy is also limited by society's right to be informed about legitimate subjects of public interest. Individuals involved in civil litigation may be compelled to give evidence which tends to embarrass them or to produce documents of a confidential nature. A debtor's right of privacy is subject to the creditors' right to take reasonable steps to collect his debt. The creditor's actions may result in some invasion of the debtor's privacy, but the debtor will be held to have a cause of action only if the steps taken are unreasonable and oppressive, or expose the debtor to public disgrace.
See also Plaquemines Parish Com'n Council v. Delta Development Co., Inc., 472 So.2d 560, 567 (La.1985). Further, we held that "[w]here a defendant's action is properly authorized or justified by circumstance, it may be found reasonable and nonactionable even though it amounts to a slight invasion of the plaintiff's privacy." Id. (citing Pitcher v. Iberia Parish School Board, 280 So.2d 603 (La. App. 3d Cir.), writ denied, 283 So.2d 496 (La.1973), cert. denied, 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974)).
In addition, Article I, Section 5 of the Constitution applies only where one has a reasonable expectation of privacy in the matter sought to be protected. The test for determining whether one has a reasonable expectation of privacy which is constitutionally protected "is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable." State v. *567 Ragsdale, 381 So.2d 492, 497 (La.1980); State v. Harper, 27-278 (La.App.2d Cir. 8/23/95), 660 So.2d 537, 547, writ denied, 95-2318 (La.1/12/96), 666 So.2d 320.
A resume is generally not something containing facts that would cause the "expose the [applicant] to public disgrace," nor would its disclosure constitute an unreasonable invasion into a person's seclusion, solitude, or private life. The applicant's subjective desire for confidentiality in this instance is not in the contents of the resume, but in the fact that he has submitted a resume. If a resume or application contains facts which would expose the applicant to public disgrace, are clearly private in nature, or are protected by law from disclosure, then that resume or application, or the private matters contained therein, may not be disclosable depending on the circumstances. However, in general, an applicant for public employment in Louisiana has no reason to expect that his or her application will be kept private. Further, in light of this state's expansive and constitutionally protected guarantee of public access to public documents, to be denied only where a law specifically and unequivocally provides otherwise, it is clear that Louisiana citizens have not yet chosen through their legislature to recognize a general right of privacy in an application for public employment. Accordingly, there is no need to balance conflicting constitutional rights, because there is no right to privacy in this case.
Yet, the federal government and at least 34 states have enacted statutes that would prohibit such applications from being disclosed, either outright or that would allow for a balancing test to determine whether disclosure would constitute a clearly unwarranted invasion of privacy.[5] The Louisiana legislature, *568 on the other hand, has enacted legislation which protects only certain information in the personnel records of a public employee which it has deemed to be confidential, i.e. home telephone numbers and addresses. Because employment applications for public employment have not been exempted from the public records law by statute, and both the constitution and statutory law require such legislative action, and because the resumes at issue have not been shown to contain facts which would expose the applicants to public disgrace or would intrude upon the applicants' seclusion, solitude, or private *569 affairs, all such applications, regardless of the responsibilities of the job at issue, are accessible under La. R.S. 44:31. In sum, under existing Louisiana law, the applicants for public employment have no right of privacy in their resumes.

Attorney Fees
The lower courts did not award plaintiffs attorney fees because the plaintiffs only prevailed in part. Under La. R.S. 44:35(D), attorney fees are awarded as follows:
If a person seeking the right to inspect or to receive a copy of a public record prevails in such suit, he shall be awarded reasonable attorney's fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney's fees or an appropriate portion thereof.
Today we have decided that plaintiffs have the right to inspect all resumes submitted for the position of Assistant Director. Because plaintiffs have prevailed, they are entitled to reasonable attorney's fees and other costs of litigation.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and judgment is rendered ordering defendants to release all applications for the position of Assistant Director of the East Baton Rouge Metropolitan Airport Authority. Defendants may delete or strike from the applications any information that is specifically excluded by law. The case is remanded to the trial court for a determination of reasonable attorney fees and costs.
REVERSED AND REMANDED.
JOHNSON, J., not on panel. Rule IV, Part 2, § 3.
NOTES
[1] "Public record" is defined as follows:

All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records," except as otherwise provided in this Chapter or as otherwise specifically provided by law.
La. R.S. 44:1(A)(2).
[2] See La. R.S. 44:2 (records involved in legislative investigations); La. R.S. 44:3 (records of prosecutive, investigative, and law enforcement agencies); La. R.S. 44:4 (numerous and various records); La. R.S. 44:5 (records in the custody of the governor): La. R.S. 44:9 (records of violations of municipal ordinances and of state statutes classified as a misdemeanor or felony); La. R.S. 44:10 (documents and proceedings of the judiciary commission); La. R.S. 44:11 (certain personnel records); La. R.S. 44:12 (certain medical records); La. R.S. 44:13 (registration records and other records of use maintained by libraries).
[3] There is no evidence in the record of an established custom of not producing applications for public employment.
[4] The Constitutional Convention discussion of La. Const. Art. 12, § 3 was as follows:

MR. JENKINS:
Mr. Chairman, delegates, this is to create the presumption that public meeting and public records are open to the public unless a specific law denies access to them. This won't change any of our statutes. Our statutes presently spell out which cases are denied, and really the relevance of this is to say that in cases where there is no law on the subject that if there has not been a specific denial of the right to public access, then access would be allowed either to the meeting or the public document involved. So, I urge the adoption of this section.
Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. IX, p. 3072-3073 (Jan. 3, 1974).
[5] Under the federal Freedom of Information Act, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are exempt from disclosure. 5 U.S.C.A. § 552(b)(6). The federal courts that have examined this issue have held that employment applications for federal government positions are exempt from disclosure under that provision.

In Core v. United States Postal Service, 730 F.2d 946 (4th Cir. 1984), the court held that the exception found in 5 U.S.C.A. § 552(b)(6) precluded the disclosure of the employment histories of unsuccessful applicants for federal employment. The court noted that the "purpose of exemption 6 is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." 730 F.2d at 947. After finding that the employment histories fell within the definition of "similar files," the court balanced the applicants' privacy interests against the public's right to know and found that the successful applicants' privacy right was outweighed by the public's interest in the competence of public employees. In contrast, the court found that for the unsuccessful applicants, disclosure may embarrass or harm them in that their present employers will learn that they wish to leave their present job and present and prospective employers, as well as co-workers, will learn that other people were deemed better qualified for a competitive appointment. Id. at 947-948. On the other hand, the court found that "[d]isclosure of the qualifications of people who were not appointed is unnecessary for the public to evaluate the competence of people who were appointed." Id. Further, the court dismissed the argument that the public needed to compare the applications, finding that "comparison of all applications may be misleading, because the appointments were made on the basis of both the applications and interviews." Id.; see also Barvick v. Cisneros, 941 F.Supp. 1015 (D.Kan.1996) (holding that disclosure of information regarding unsuccessful applicants was precluded by 5 U.S.C.A. § 552(b)(6)); Putnam v. United States Dep't of Justice, 873 F.Supp. 705 (D.D.C.1995) (identities of FBI personnel who were job candidates); Samble v. United States Dep't of Commerce, slip. op. at 9-10 (information regarding unsuccessful job applicants); Holland v. CIA, 1992 WL 233820 (D.D.C.1992) (protecting identity of person not selected as CIA General Counsel); Commodity News Serv., Inc. v. Farm Credit Admin., No. 88-3146, slip op. at 6-8 (D.D.C.1989).
Like the federal government, most states have exemptions in their public record laws that exempt personal information that if disclosed would constitute an unwarranted invasion of privacy. Other state statutes contain an outright exemption for employment applications. See Ark.Code Ann. § 25-19-105(b)(10) ("personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy"); Cal.Gov.Code § 6254(c)("personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy"); Colo. Rev.Stat. § 24-72-204(3)(a)(II)(A) (personnel files, including home addresses, telephone numbers, financial information, and other information maintained because of the employer-employee relationship); Conn. Gen.Stat. § 1-19(b)(2) (personnel or medical files and similar files the disclosure of which would constitute an invasion or medical privacy); 29 Del.Code Ann. § 10002(d)(1) (any personnel, medical or pupil file, the disclosure of which would constitute an invasion of personal privacy); D.C.Code Ann. § 1-1524(a)(2) (information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy); Ga.Code Ann. § 50-18-72 (records that consist of confidential evaluations submitted to, or examinations prepared by, a governmental agency and prepared in connection with the appointment or hiring of a public officer or employee); Haw. Rev.Stat. § 92F-13 (governments records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy) and § 92F-14 (individual has a significant privacy interest in information in an agency's personnel file, or applications); Idaho Code, Vol. 2, § 9-340(36) (all other personnel information relating to a public employee or applicant, including, but not limited to, information regarding sex, race, marital status, birth date, home address and telephone number, applications, testing and scoring materials, grievances, correspondence and performance evaluations, shall not be disclosed to the public without the employee's or applicant's written consent.); 5 Ill. Comp. Stat. § 140/7(b)(ii) (personnel files and personal information maintained with respect to employees, appointees or elected officials of any public body or applicants for such positions constitute information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy); Ind.Code § 5-14-3-4(b)(8) (personnel files of public employees and files of applicants for public employment); Kan.Stat. Ann. Vol. 3A, § 45-221(a)(4) (personnel records, performance ratings or individually identifiable records pertaining to employees or applicants for employment); Ky.Rev.Stat. Ann. § 61.878(1)(a) (public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy); Md. Code Ann. § 10-616(1) (personnel records of an individual, including an application); Mich. Comp. Laws Ann. § 15.243(1) (information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy); Mo.Rev.Stat. Ann. § 610.021(13) (individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment); Neb.Rev.Stat. § 84-712.05(7) (personal information in records regarding personnel of public bodies other than salaries and routine directory information); N.C. Gen.Stat. § 153A-98 (personnel files of employees, former employees or applicants for employment are not governed by the public records act); N.H. Rev.Stat. § 91-A:5 (records relating to internal personnel practices); N.M. Stat. Ann. § 14-2-1 B (letters of reference concerning employment); N.Y.Con. Law, Book 46, § 87(2)(b) (records which if disclosed would constitute an unwarranted invasion of personal privacy); Okla.Stat. Ann. Title 51, § 24A.7 (personnel records where disclosure would constitute a clearly unwarranted invasion of personal privacy such as employment applications submitted by persons not hired by the public body); Or. Rev.Stat. § 192.502(2) (information of a personal nature such as that kept in a personal, medical or similar file if the public disclosure thereof would constitute an unreasonable invasion of privacy); 65 Penn. Stat. Ann. § 66.1(2) (any report, communication or other paper, the publication of which would operate to the prejudice or impairment of a person's reputation or personal security); R.I. Gen. Laws § 38-2-2(d)(1) (information in personnel files maintained to hire any employee of a public body); S.C.Code § 30-4-40(a)(2) (information of a personal nature where the public disclosure thereof would constitute an unreasonable invasion of personal privacy); Tex. Govt.Code § 552.102(a) (information in a personnel file, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy); Utah Code § 63-2-302(2)(a) (records concerning a current or former employee of, or applicant for employment with a governmental entity); Vt. Stat. Ann. Title 1, § 317 (personal documents relating to an individual, including information in any files maintained to hire any employee of a public agency); Va.Code § 2.1-342(B)(3) (personnel records containing information concerning identifiable individuals); Wash. Rev.Code § 42.17.310(1)(t) (all applications for public employment, including the names of applicants, resumes, and other related materials submitted with respect to an applicant); W.Va. Code § 29B-1-4 (information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy); Wis. Stat. Ann. § 19.36(7) (except with respect to an applicant whose name is certified for appointment to a position in the state classified service or a final candidate, if an applicant makes such an indication in writing, the authority shall not provide access to any record related to the application that may reveal the identity of the applicant); Wyo. Stat. Ann. § 16-4-203(d)(iii) (applications, performance ratings and scholastic achievement data shall be available only to the person in interest and to the duly elected and appointed officials who supervise work).