McClendon, j.
LThe defendants challenge the district court’s judgment declaring that certain documents requested by the plaintiffs are public records under Louisiana’s Public Records Act. The defendants also appeal a later district court judgment that awarded the plaintiffs civil penalties and attorney fees, contending that the amounts awarded are excessive. For the reasons that follow, we reverse in part, amend in part, and affirm, as amended.[1]
FACTUAL AND PROCEDURAL . HISTORY
This matter began with multiple public records requests to and lawsuits against the Louisiana State University Board of Supervisors and its former chairman, Hank Danos (the defendants), relating to the 2012-2013 search by LSU to fill the position of President/Chancellor of the LSU system. On April 1, 2013, Capital City Press, L.L.C. d/b/a The Advocate and Koran Addo filed a Petition for Writ of Mandamus, Declaratory Judgment, and Injunctive Relief Pursuant to the Louisiana Public Records Act, in the 19th Judicial District Court, Docket Number 620,-353, which matter was assigned to Division “D” (The Advocate case).[2] Also, on April 1, 2013, Andrea Gallo, editor of “The Daily Reveille,” LSU’s student newspaper, filed a similar suit, in the 19th Judicial District Court, Docket Number 620,364, which was allotted to Division “F” (The Daily Reveille case). On April 8, 2013, The Times-Picayune, L.L.C. and Quincy Hodges filed their similar Petition for Writ of Mandamus, Declaratory Judgment, and Injunctive Relief Pursuant to the Louisiana Public Records Act, in the 19th Judicial District Court, Docket Number 620,553, which was allotted to Division “O” (The Times-Picay *731 une case). By agreement of the parties, The Times-Picayune case was consolidated with The Advocate case in Division “D” and ^scheduled for trial on April 25. The Daily Reveille case was not joined due to the unavailability of counsel at that time, and The Advocate, The Times-Picayune, and LSU requested that the consolidated cases be transferred into The Daily Reveille case so that the three cases could proceed together to trial on April 30. However, Judge Janice Clark in Division “D” denied the request to transfer the consolidated cases to Division “F.” Thus, the trial in the present matter was held on April 25, 2013, after which the district court held that the requested records were public records in accordance with Louisiana’s Public Records Act and ordered that the defendants produce the requested records. A judgment was signed on April 30, 2013, ordering the defendants to immediately produce the following:
• all resumes, CVs, or other records reviewed (online or otherwise) by one or more members of the Board or the “Presidential Search Committee” reflecting the qualifications of the 35 “active” applicants to which Mr. Chatelain referred during the Board’s March 18, 2013, regular meeting;
• all resumes, CVs, or other records reviewed (online or otherwise) by one or more members of the Board or the “Presidential Search Committee” reflecting the qualifications of the 6 or 7 applicants who, according to Mr. Cha-telain, were selected by the “Presidential Search Committee” for additional interviews or consideration;
• all documents reflecting the dates, times, and locations of all interviews of applicants conducted by any member of the Board and/or the “Presidential Search Committee”; and
• the names of each applicant for the position of president, the qualifications of each such applicant related to such position, and any relevant employment history or experience of such an applicant, as required by La.Rev.Stat. § 44:12.1.
The judgment also reserved the issue of damages, court costs, and attorney fees for full briefing and adjudication by the district court.[3]
On May 10, 2013, the defendants filed a notice of suspensive appeal that was opposed by The Advocate and The Times-Picayune (the plaintiffs). On May 14, 2013, the district court denied the request for a suspensive appeal on the [4basis that the April 30, 2013 judgment was not a final judgment. Meanwhile, on May 13, 2013, the plaintiffs filed a rule for contempt, contending that despite the April 30, 2013 judgment that ordered the defendants to “immediately produce” the records and information described in the judgment, the defendants had failed to do so. In response, on May 20, 2013, the defendants filed an Alternative Motion to Stay and Request for Expedited Consideration of Motion. In the motion, the defendants asserted that if the district court should find that the April 30, 2013 judgment was not final and immediately appealable, then they were seeking an order staying the execution of the judgment pending a writ application to this court. Because of the pending rule for contempt, the defendants also requested expedited consideration. On May 23, 2013, the district court granted *732 the request for expedited consideration and stayed the matter for fourteen days. Also on May 20, 2013, the defendants filed an Alternative Motion to Certify Judgment as Final, which was denied as moot by the district court on May 23, 2013, and an Alternative Notice of Intent to Apply for Supervisory Writ, which was also denied as moot on May 23, 2013. Thereafter, on May 28, 2013, the court granted an order allowing the defendants to proceed with their application for supervisory writs, giving them until June 6, 2013, to file their application with the court of appeal, and granting a stay until June 6, 2013.
On June 6, 2013, the defendants filed their application for supervisory writs with this court and also requested a stay of the proceedings. On July 19, 2013, a three-judge panel of this court denied the defendants’ writ application.[4]
After that, on July 25, 2013, the defendants filed an Expedited Motion to Set Trial on Remaining Issues, and the district court issued an order setting the remaining issues for trial on September 9, 2013. The plaintiffs also filed a Motion for Expedited Hearing on Supplemental Rule for Contempt, which was set | sfor August 14, 2013. On August 6, 2013, the defendants filed a Renewed Motion to Certify Judgment as Final, which was also set for August 14, 2013.
At the August 14 hearing on the rule for contempt, the defendants maintained that they could not produce the requested records without risking the loss of the right to appeal the April 30, 2013 judgment. The district court disagreed and held LSU in contempt, imposing a $500.00 per day sanction, retroactive to the April 30, 2013 judgment.[5] The court also denied the defendants’ renewed motion to certify the underlying judgment as final. A judgment in conformity with the ruling was signed by the district court on August 21, 2013.
On August 15, 2013, the defendants filed a Notice of Suspensive Appeal of the contempt judgment, which, on August 23, 2013, was denied by the district court as not being a final judgment. Also on August 15, 2013, the defendants filed an Alternative Notice of Intent to Apply for Supervisory Writ and filed a Motion to Certify Judgment as Final. On August 21, 2013, the district court denied the motion to certify the contempt judgment as final. On August 28, 2013, the defendants applied for writs to this court from the denial of the suspensive appeal of the contempt judgment.
In the meantime, the defendants filed an application for Writs with the Louisiana Supreme Court regarding the underlying judgment. On August 28, 2013, the supreme court denied the writ application and the request to stay the underlying judgment, but stated:
Stay denied; writ denied. Insofar as relator is aggrieved by the August 14, 2013 judgment imposing sanctions for contempt, it has an adequate remedy by suspensive appeal. See La.Code Civ. P. art. 1915(A)(6); In re: Jones, 10-0066 (La.App. 5 Cir. 11/9/10), 54 So.3d 54.[6]
*733 [ ,-Thereafter, on September 19, 2013, this court granted the defendants’ writ application from the district court’s denial of a suspensive appeal from the contempt judgment. Referencing the supreme court action of August 28, 2013, we remanded the case to the district court with instructions to grant the defendants a suspensive appeal.[7]
On September 9, 2013, the scheduled date of the trial on the remaining issues, the district court again ordered the defendants to produce the documents immediately and recessed the matter until September 10, 2013, to revisit the issue of additional sanctions. On September 10, 2013, the district court ordered that an instanter subpoena issue to the sheriff commanding him to seize all public documents in accordance with its April 30, 2013 judgment, in the place and stead of the defendants, and that the defendants immediately produce the requested documents to the sheriff. No further documents were produced. Thereafter, after conferring with the court in chambers, the parties agreed to try to resolve the issue of production through in-camera production without publication.
On September 16, 2013, the parties entered into a Joint Agreement and Stipulation, wherein the defendants stated that they requested R. William Funk, the consultant holding the documents at issue, to produce the requested records for production under seal during the appeal of the underlying judgment. The agreement also provided that upon delivery of the documents to the court, the accrual of the daily sanction would be suspended. Mr. Funk agreed to produce the records, which were delivered to the court under the terms of the agreement.[8]
After the production of the documents under seal, the trial of the remaining issues was held on September 26, 2013. A judgment was signed on October 23, 2013, ordering the defendants to pay the plaintiffs $61,617.50 in 17attorney fees and' $7,074.99 in costs, pursuant to LSA-R.S. 44:35D. The district court further ordered, pursuant to LSA-R.S. 44:35E(1), that the defendants pay each of the plaintiffs a civil penalty in the amount of $100 per day, exclusive of Saturdays, Sundays, and legal public holidays, beginning March 27, 2013, and ending September 30, 2013.
The defendants filed a suspensive appeal of the April 30, 2013, and October 23, 2013 judgments, assigning the following as error:
1. The district court erred in declaring information on a private consultant’s website to be “public records” notwithstanding the provisions of LSA-R.S. 44:12.1 and the defendants’ lack of custody and control.
2. The district court erred in awarding civil penalties in excess of the limitations of LSA-R.S. 44:35E.
3. The district court erred in awarding attorney fees at a rate in excess of the limitation provided by LSA-R.S. 44:35F.
4. Alternatively, the district court erred in denying a suspensive appeal from the judgment granting the request for declaratory judgment and writ of mandamus.
*734 5. Alternatively, the district court erred in not certifying as final the judgment granting the request for declaratory judgment and writ of mandamus.
DISCUSSION

The Motion to File Portions of Brief Under Seal

Initially, we address the plaintiffs’ Motion to File Portions of Brief Under Seal in this court. In their motion, the plaintiffs assert that the defendants delivered certain documents to the district court under seal on September 16, 17, and 30, 2013. Pursuant to the Joint Agreement and Stipulation, counsel for the plaintiffs is permitted to review the documents, but is not permitted to disclose any information from the documents except in confidential communications exclusively with the court and the defendants’ counsel. The Joint Agreement and Stipulation provides, in pertinent part:
The Court will allow Loretta Mince,, Plaintiffs’ counsel, to review the Documents for the sole purpose of confirming that the Documents requested by the Plaintiffs have been provided to the Court for the purposes of the Joint Agreement and Stipulation, and Plaintiffs’ counsel shall not divulge any information from those Documents to anyone (including her clients) except that (1) | ¡¿Plaintiffs’ counsel may describe the documents generally to her clients without disclosing the contents of any of the Documents, which information shall not be published or disclosed by Plaintiffs to anyone except as expressly provided herein; and (2) Plaintiffs’ counsel may discuss the Documents in confidential communications exclusively with the Court and Defendants’ legal counsel. Nothing herein shall restrain Plaintiffs from disclosure of any information obtained from any other source.
The Joint Agreement and Stipulation was signed by and made an order of the dis-' triet court on September 16, 2013.
The plaintiffs argue, in their motion, that their counsel references certain documents submitted to the district court under seal in aid of arguments that are indispensable'to this court’s consideration of the issues on appeal. The plaintiffs further assert that in order to comply with the Joint Agreement and Stipulation, counsel has redacted such references from their filed appellate brief and that counsel has separately provided an un-redacted copy to the court. The plaintiffs’ counsel maintains that her references to the records are permitted under the Joint Agreement and Stipulation.
The defendants contend, however, that the plaintiffs’ use of information in the records that were produced under the Joint Agreement and Stipulation to support their arguments on the merits of this appeal defies the terms and purpose of the agreement. They assert that according to the agreement the “sole purpose” of allowing the plaintiffs’ counsel to review the documents was to confirm the tender and to allow the records to be used to support their arguments on the merits constitutes a “brazen violation of the Agreement.” The defendants also argue that the records produced under the agreement were not part of the evidence considered by the district court in any of its decisions.
We agree with the defendants. Not only does the plaintiffs’ request arguably not fit within the agreement or its purpose, but our review is limited strictly to the record as it existed at the time the underlying judgment was rendered. See LSA-C.C.P. art. 2164; Collins v. Mike’s Trucking Co., Inc., 05-0238, p. 15 (La.App. 1 Cir. 5/5/06), 934 So.2d 827, 836, writ denied, *735 06-1914 (La.12/8/06), 943 So.2d 1094. Accordingly, we deny the plaintiffs’ Motion to File Portions of Brief under Seal.

Are the Requested Documents Subject to Disclosure?

Louisiana’s public records law defines “Public records” in LSA-R.S. 44:lA(2)(a) as:
All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings,' memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, ... except as otherwise provided in this Chapter or the Constitution of Louisiana.
As such, the plaintiffs argue that the requested records are clearly public records and must be produced.[9] However, the defendants contend that their reasonable expectation of privacy is embodied in LSA-R.S. 44:12.1, entitled “Records of applicants for public positions; prohibitions,” enacted in 2006[10] and which provides:
A. The name of each applicant for a public position of authority or a public position with policymaking duties, the qualifications of such an applicant related to such position, and any relevant employment history or experience of such an applicant shall be available for public inspection, examination, copying, or reproduction as provided in Part II of this Chapter.
hnB. (1) No public body or agent acting on behalf of such a public body shall utilize only oral contacts and interviews of applicants considered when filling vacancies in public positions of authority or public positions with policymaking duties or use any other means to circumvent the provisions of this Section.
(2)(a) Nothing in this Section shall prohibit oral contact prior to a person becoming an applicant or shall prohibit *736 oral contact which may result in written documents.
(b) Nothing in this Paragraph shall require a particular method or procedure for filling vacancies as long as not exclusively by use of oral contact.
(3) Any person who violates the provisions of this Section shall be subject to all applicable penalties for violations of this Chapter. (Emphasis added.)
The defendants argue that the district court erred in declaring the requested information “public records” in disregard of LSA-R.S. 44:12.1. According to the defendants, the issue presented in this matter is “whether the undisclosed records on [Mr.] Funk’s website are public records vel non under either the specific provisions of [LSA-] R.S. 44:12.1 (‘Records of applicants for public positions’) or the general definition of a public record at [LSA-] R.S. 44:1.” The defendants assert that they did not circumvent the public records law. They maintain that the district court erred in disregarding the specific statute and ruling on the general definition. In contrast, the plaintiffs argue that LSA-R.S. 44:12.1 does not exempt the records requested from disclosure. They further 'contend that the statute was not intended to restrict the public’s right to inspect the records requested or to create the distinction between a “candidate” and an “applicant.”
Article XII, Section 3 of the Louisiana Constitution provides that “no person shall be denied the right to ... examine public documents, except in cases established by law.” The legislature has codified this right in the Louisiana Public Records Act, LSA-R.S. 44:1, et seq. City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press, L.L.C., 07-1088, 07-1089 (La.App. 1 Cir. 10/10/08), 4 So.3d 807, 816. Pursuant to this law, any person of the age of majority may inspect, copy or reproduce, and any person may obtain a copy or a reproduction of¡ any public record “[e]x-cept as otherwise provided in this In Chapter or as otherwise specifically provided by law.” LSA-R.S. 44:31.[11] Furthermore, the burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian. LSA-R.S. 44:3133(3).
Because the right of access to public records is a fundamental right, guaranteed by the constitution, access can be denied only when a law, specifically and unequivocally, provides otherwise. Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979 (La.7/1/97), 696 So.2d 562, 564 (quoting Title Research Corp. v. Rausch, 450 So.2d 933, 936 (La.1984)). Whenever there is doubt as to whether the public has the right of access to certain records, the doubt must be resolved in favor of the public’s right to see. To allow otherwise would be an improper and arbitrary restriction on the public’s constitutional rights. Id.
On the other hand, Article I, Section 5 of the Louisiana Constitution ex *737 pressly prohibits unreasonable invasions of privacy. The right to privacy in Louisiana has been described as the right to be let alone and to be free from unnecessary public scrutiny. Capital City Press, 696 So.2d at 566. The right to privacy is not absolute; it is qualified by the rights of others, and it is also limited by society’s right to be informed about legitimate subjects of public interest. Id. In ascertaining whether individuals have a reasonable expectation of privacy that is constitutionally protected, a court must determine not only whether the individual has an actual or subjective expectation of privacy, but |1gwhether that expectation is also of a type which society at large is prepared to recognize as being reasonable. Angelo Iafrate Construction, L.L.C. v. State ex rel. Department of Transportation and Development, 03-0892 (La.App. 1 Cir. 5/14/04), 879 So.2d 250, 255. See also Beckett v. Serpas, 12-1349 (La.App. 4 Cir. 3/20/13), 112 So.3d 348, 352.
When a request for public records is at issue, the custodian or the individual claiming the privacy right must prove that there is a reasonable expectation of privacy against disclosure of the information to a person entitled to access to the public information. Angelo Iafrate Construction, L.L.C., 879 So.2d at 255. See Beckett, 112 So.3d at 351. If, and only if, a reasonable expectation of privacy is found, the court must weigh or balance the public records disclosure interest against the privacy interest. Angelo Iafrate Construction, L.L.C., 879 So.2d at 255. The balancing of these competing interests is done on a case-by-case basis given the particular facts and circumstances of each case that impact those interests. Broderick v. State, Dept. of Environ., 2000-0156 (La.App. 1 Cir. 5/12/00), 761 So.2d 713, 715. See Beckett, 112 So.3d at 352.
With these precepts in mind, we must first determine the proper interpretation and application of LSA-R.S. 44:12.1. The proper application and interpretation of a statute is a question of law. Cleco Evangeline, LLC v. Louisiana Tax Com’n, 01-2162 (La.4/3/02), 813 So.2d 351, 353; McKenzie v. Imperial Fire and Cas. Ins. Co., 12-1648 (La.App. 1 Cir. 7/30/13), 122 So.3d 42, 46, writ denied, 13-2066 (La.12/6/13), 129 So.3d 534. Questions of law are reviewed de novo, with the judgment rendered on the record, without deference to the legal conclusions of the tribunal below. Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 06-0582 (La.11/29/06), 943 So.2d 1037, 1045 (citing Louisiana Municipal Association v. State, 04-0227 (La.1/19/05), 893 So.2d 809, 836-37).
Legislation is the solemn expression of legislative will, and therefore, the interpretation of a law involves primarily the search for the legislature’s intent. 11sLSA-C.C. art. 2; Holly & Smith Architects, Inc., 943 So.2d at 1045. The interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9; Holly & Smith Architects, Inc., 943 So.2d at 1045. See also Hunter v. Morton’s Seafood Restaurant & Catering, 08-1667 (La.3/17/09), 6 So.3d 152, 155. Furthermore, the laws of statutory construction require that laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13; Holly & Smith Architects, Inc., 943 So.2d at 1045. The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same sub *738 ject matter. Under longstanding rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. Holly & Smith Architects, Inc., 943 So.2d at 1045. Thus, a statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. Id.
In addition, a general rule of statutory construction is that a specific statute controls over a broader, more general statute. Burge v. State, 10-2229 (La.2/11/11), 54 So.3d 1110, 1113. It is a fundamental rule that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Id. Also, there is a presumption that those who enact statutory provisions act deliberately and with full knowledge of existing laws on the same subject, with knowledge of the effect of their act and a purpose in view. Toomy v. Louisiana State Employees’ Retirement System, 10-1072 (La.App. 1 Cir. 3/25/11), 63 So.3d 198, 202, writ denied, 11-1118 (La.10/21/11), 73 So.3d 383.
| uLouisiana Revised Statutes 44:12.1 A specifically provides that the name of each applicant for a public position of authority or a public position with policymaking duties, the qualifications of such an applicant, and any relevant employment history or experience of such an applicant shall be available for public inspection, examination, copying, or reproduction as provided in the public records law. In contrast, LSA-R.S. 44:31 is a generalized statute providing for the right to examine public records, “[ejxcept as otherwise provided in this Chapter or as otherwise specifically provided by law.”
A review of the legislative history of Acts 2006, No. 746, reveals the specific nature of the statute. The Resume Digest for House Bill 58, which was signed by the governor and became Act No. 746, effective August 15, 2006, provides, in relevant part:
Existing law (R.S. 44:1 et seq., relative to public records) provides that all books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of the state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of the state, are “public records”. Provides for certain exceptions. Existing law additionally provides that any person of the age of majority may inspect or copy any public record and provides that any person may obtain a reproduction of a public record. Existing law specifies that it shall be the duty of the custodian to provide such copies to the person so requesting.
New law specifies that the name of each applicant for a public position of *739 authority or a public position with poli-cymaking duties and such applicant’s qualifications and relevant employment history or experience shall be available for public inspection, examination, copy- . ing, or reproduction as provided in existing law (R.S. 44:31 et seq.).
Applying the well-established rules of statutory construction in this matter, we find that LSA-R.S. 44:12.1 controls over the more generalized provision of LSA-R.S. 44:31. Therefore, it is clear that the legislature intended that only |1swhen an individual becomes an applicant for a public position must that individual’s information be disclosed. However, our discussion does not end there. The legislature has chosen not to define “applicant” in LSA-R.S. 44:12.1. Therefore, the issue before us is the correct interpretation of “applicant” in LSA-R.S. 44:12.1 and its application in the present matter.
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. LSA-R.S. 1:3. Thus, in interpreting statutes, the court must give the words of a law their generally prevailing meaning. Cleco Evangeline, LLC, 813 So.2d at 354. Black’s Law Dictionary (9th Edition 2009) defines “applicant” as “[o]ne who requests something; a petitioner, such as a person who applies for letters of administration.”
Therefore, mindful that the relevant statutory provisions are to be interpreted liberally in favor of providing public access, while exceptions to that access are to be narrowly construed, and balancing one’s expectation of privacy, we find that the term “applicant” as used in LSA-R.S. 44:12.1 could and should reasonably be interpreted to mean an individual who has expressed his or her desire through words or actions to be considered for the position in question. We reject the defendants’ argument that such an individual does not become an applicant until he or she has filled out the application paperwork, finding such an interpretation too narrow. However, we also find that an individual who has engaged in conversations to gather additional information regarding the position, without more, is not an applicant. This distinction, between individuals recruited informally on assurances of confidentiality prior to expressing a desire for the position and persons who subject themselves to public disclosure by clearly indicating their desire for consideration, is significant. There must be some unqualified overt action on the part of the individual, such as, completing an online or paper application, presenting oneself for an interview, or verbally or electronically indicating his or her desire to be considered for the position, in |1fiorder for that individual to become an applicant within the meaning of the statute.
With that definition in mind, we now review the record before us to determine which individuals for which public records were sought would be considered applicants within the meaning of LSA-R.S. 44:12.1.
Blake Chatelain, a member of the LSU Board of Supervisors (Board) and chairman of the Presidential Search Committee (Committee), testified by deposition. He stated that the search for the LSU system’s president/chancellor was conducted as recommended by the search consultant, Mr. Funk, to target and recruit the best candidates prior to a formal application process. After placing advertisements, mailing more than 600 letters to a proprietary mailing list of higher education leaders across the country, and receiving names from the Committee and Board, Mr. Funk assembled a master log of ap *740 proximately 100 candidates.[12] Mr. Chate-lain testified that the master log was a spreadsheet-type document available on the website. He testified that “there were numerous candidates that we were talking to that were just looking for additional information and weren’t even sure if they were interested in the job.” When asked if any of the candidates told him that he or she was interested in the job, Mr. Chate-lain responded that certainly, Mr. Alexander did. When asked again whether any person other than Mr. Alexander expressed to him in any words that communicated that he or she were interested in becoming the next president of LSU, after stating that he did not recall, Mr. Chate-lain replied: “I had candidates who said they were interested in continuing to have conversations about the opportunity.”
With regard to the 100 candidates, the following discussion took place:
Q. All right. But then certainly there is some portion of the 100 that did say they were interested; correct?
A. That said they were interested in learning more, yes.
Q. And how many would that be about?
|17A. Well, I think — I think — I think at one point we got down to a field of about 35 that expressed interest in continuing to have conversations or learning more.
Q. And the other people who didn’t make the cut of 35 were either people who you had decided you weren’t interested in or who had told you that they were not interested?
A. Now, I think for the most part, those were people that had just said, hey, not interested or just clearly didn’t meet the qualifications that would say they should get any further investigation.
Q. All right. So in order to get to the list of 35, why don’t you walk me through how you derived the names of 35 people?
A. Well, I think for the most part, [Mr. Funk] derived the names of 35 by his conversations, by his discussions, by his reviewing the. candidate profile, if you would, and the traits that you were looking for. And so I think in one of our meetings we had the discussion that, hey, we’ve got a pool of potential candidates of about 35 people that is kind of what [Mr. Funk] submitted to the Committee as the top prospects.
Q. What role, if any, did the members of the Committee play in coming up with the 35?
A. I don’t — other than names that may have been submitted or ideas that may have been floated, up to that point, really not.
Mr. Chatelain was asked:
Q. When you got down to the list of 35, were those all people who had consented to being considered for the position?
A. You would have to — you would have to ask Bill Funk, specifically, on that. I think that was — those were 35 candidates that we felt like, you know, still had the qualifications that we could — should review and see if we wanted to continue to pursue any of them or narrow it down. So in terms of — I never asked those 35, do you consent?[13]
*741 Q. Had all 35 been contacted at that point by someone either at Funk or on the Committee?
A. I couldn’t tell you. I don’t know what [Mr. Funk’s] connection or contact with those were. So they certainly were not — those 35 had not been contacted by the Committee and I really^ — you would have to ask [Mr. Funk] how much contact he had with that group of 35 beyond a letter or, you know, some way of conversations.
|1sMr. Chatelain further testified that once the thirty-five or so were identified, he asked the Committee to dial into the web portal and review the information to pick their top candidates. This was identified as the “top ten” exercise. Mr. Chate-lain had an individual telephone call with each member of the Committee, and he stated that it was clear who the top candidates were. He stated that, in his mind, there were five clear candidates.[14] At that point, one candidate decided to withdraw, and another candidate, who was involved in another job search that the Committee did not know about, took another job. Mr. Chatelain stated that that left three candidates who were interviewed. Mr. Chate-lain testified that all three indicated that if their name had to be released at that point, they would not apply for the position. Thereafter, Dr. F. King Alexander was nominated by the Committee and his resume was placed on file in the LSU System office. At a special meeting of the Board on March 27, 2013, Dr. Alexander was appointed to the position without objection or opposition.
The district court, after hearing the argument of counsel, ordered the immediate production of the requested documents, declaring “that the requested records herein sued upon are indeed public records in accordance with the Louisiana Public Records Act, ... and that no valid exemption justifies defendant’s failure to produce them.”[15]
Upon our thorough review of the record, we find that the district court erred. See Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993).[16] We cannot say that a reasonable factual basis exists for the finding that these thirty-five candidates were all applicants. The record indicates that these names were part of a broad wish list compiled by the |18Committee. While one might infer that many, if not all, of these candidates had consented or sought to be considered for the position and would therefore be an applicant, the record lacks sufficient evidence to support such a determination. Keeping in mind that the legislature specifically chose to use the word “applicant”, and giving it the meaning intended by the legislature, the record simply does not establish that the entire list of thirty-five had applied for the position at LSU. Therefore, because the legislature has determined that only the information regarding applicants for a public position shall be available for public inspection, the district court erred in requiring the pro *742 duction of “all resumes, CVs, or other records reviewed (online or otherwise) by one or more members of the Board or the “Presidential Search Committee” reflecting the qualifications of the 35 “active” applicants to which Mr. Chatelain referred during the Board’s March 18, 2013, regular meeting.” Accordingly, that portion of the April 30, 2013 judgment requiring said production is reversed.
However, with regard to the last three candidates who participated in interviews, we find that these individuals fall within the definition of an applicant under LSA-R.S. 44:12.1 as contemplated by the legislature. The three individuals were interviewed by members of the Board and of the Committee at either a hotel or airport. By traveling to and participating in the interview process, these persons clearly were expressing a desire to be considered for the position. Accordingly, information regarding the three individuals must be produced. Further, with regard to the candidate who decided to withdraw, we find that the trial court did not err in finding that this candidate was an applicant subject to public records disclosure. The district court could have reasonably concluded that in order to withdraw, the candidate must have previously consented or sought to have been considered for the position. However, we find no reasonable basis in the record to find that the individual who took another position qualified as an applicant.
The defendants also argue that the district court erred in ordering LSU to produce records beyond its custody and control. Specifically, they assert that the hninformation on Mr. Funk’s website is not public simply because it was viewed by the Committee. They maintain that the information was not in their custody or control, as Mr. Funk’s company, R. William Funk & Associates, a private entity, had exclusive ownership of all records generated by him during the presidential search. However, under LSA-R.S. 44:12.1B(1) “[n]o public body or agent acting on behalf of such a public body shall utilize only oral contacts and interviews of applicants considered when filling vacancies in public positions of authority or public positions with policymaking duties or use any other means to circumvent the provisions of this Section.” (Emphasis added.) Therefore, in light of this provision, all information in the possession of R. William Funk & Associates regarding the name of an applicant, the qualifications of an applicant, and the relevant employment history or experience of such applicant, is discoverable. See LSA-R.S. 44:12.1A.

Penalties and Attorney Fees

In these assignment of errors, the defendants contend that the district court erred in awarding civil penalties in excess of the limitations of LSA-R.S. 44:35E and in awarding attorney fees at a rate in excess of the limitation provided in LSA-R.S. 44:35F.
Louisiana Revised Statutes 44:35 provides, in pertinent part:
D. If a person seeking the right to inspect or to receive a copy of a public record prevails in such suit, he shall be awarded reasonable attorney’s fees and other costs of litigation. If such person prevails in part, the court may in its discretion award him reasonable attorney’s fees or an appropriate portion thereof.
E. (1) If the court finds that the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32, it may award the requester any actual damages proven by him to have resulted from the actions of the custodian except
*743 as hereinafter provided. In addition, if the court finds that the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 it may award the requester civil penalties not to exceed one hundred dollars per day, exclusive of Saturdays, Sundays, and legal public holidays for each such day of such failure to give notification.
(2) The custodian shall be personally liable for the payment of any such damages, and shall be liable in solido with the public body for the payment of the requester’s attorney fees and other [21 costs of litigation, except where the custodian has withheld or denied production of the requested record or records on advice of the legal counsel representing the public body in which the office of such custodian is located, and in the event the custodian retains private legal counsel for his defense or for bringing suit against the requester in connection with the request for records, the court may award attorney fees to the custodian.
F. An award for attorney fees in any suit brought under the provisions of this Chapter shall not exceed the amounts approved by the attorney general for the employment of outside counsel.
The defendants contend that the district court clearly erred in awarding civil penalties. They argue that the language of the statute is unambiguous and that penalties are due only for each day of the failure to respond to a request as required under LSA-R.S. 44:32.[17] The defendants believe that because the district court awarded penalties for the duration of time from the initial records request to the date the records were produced, it effectively treated the civil penalty as an additional sanction for contempt. The plaintiffs, however, assert that the award was a proper award of damages.
In its October 23, 2013 judgment, the district court specifically awarded to each plaintiff “a civil penalty” in the amount of $100 per day, exclusive of Saturdays, Sundays, and legal holidays, beginning March 27, 2013, and ending September 30, 2013. Thus, this is not an award of actual damages awarded when “the custodian arbitrarily or capriciously withheld the requested record or unreasonably or arbitrarily failed to respond to the request as required by R.S, 44:32,” but rather is an award of civil penalties when “the custodian unreasonably or arbitrarily failed to respond to the request as required by R.S. 44:32 ” LSA-R.S. 44:35E.
IsyThe language of the statute is unambiguous, and the civil penalty provision applies “for each such day of such failure to give notification.” LSA-R.S. 44:35E. It does not apply to the time frame for producing the documents. Thus, the trigger for a discretionary award of civil penalties is the failure of the custodian to properly respond to a requester within the three-day statutory period. See Innocence Project New Orleans v. New Orleans Police Dept., 13-0921 (La.App. 4 Cir. 11/6/13), 129 So.3d 668, 675. Further, LSA-R.S. 44:35E allows civil penalties only when the *744 custodian “unreasonably or arbitrarily failed to respond to the request as required by R.S: 44:32.” Washington v. Reed, 95-1067 (La.App. 1 Cir. 2/23/96), 668 So.2d 1313, 1314.
Based on our review of the record, we find that LSU complied with the notification requirements of LSA-R.S. 44:32D, and civil penalties under LSA-R.S. 44:35E are not warranted.[18] Additionally, we do not find that the actions of the defendants were unreasonable or arbitrary in defending their position that the names and information regarding the thirty-five individuals were excluded from the public records law and in asserting their good faith belief in their interpretation of LSA-R.S. 44:12.1.[19] Accordingly, we reverse the district court’s award of civil penalties to the plaintiffs.
Because we have decided that the plaintiffs have the right to inspect some of the documents requested, they have prevailed in part and, thus, the district court was within its discretion to award attorney fees. See LSA-R.S. 44:35D. The defendants contend, however, that the amount of the award by the district l^court was blatantly excessive and clear error. Furthermore, the defendants believe that the award reflected the fundamental unfairness demonstrated by the district court toward them in this proceeding. They allege that the district court rejected the statutory limitation of LSA-R.S. 44:35F that “[a]n award for attorney fees in any suit brought under the provisions of this Chapter shall not exceed the amounts approved by the attorney general for the employment of outside counsel” and awarded attorney fees at twice the hourly rate requested by the plaintiffs. The plaintiffs argue, however, that the district court did not err in finding that an attorney fee calculated using a $175 per hour rate was unreasonable and in calculating the award using counsel’s rate of $350 per hour.
As a general rule, attorney fees are not due and owing a successful litigant unless specifically provided for by contract or by statute. Bridges v. Lyondell Chemical Co., 05-1535 (La.App. 1 Cir. 6/9/06), 938 So.2d 786, 789, writ denied, 06-2196 (La.11/17/06), 942 So.2d 541. Our courts have construed such statutes strictly because the award of attorney fees is exceptional and penal in nature. Id. See also SWC Services, LLC v. Echelon Const. Services, LLC, 10-1113 (La.App. 1 Cir. 2/11/11), 56 So.3d 1254, 1257.
The record reflects that the parties agreed regarding the rates approved by *745 the attorney general for this type of complex litigation. The plaintiffs requested an award based on the attorney general rates and introduced no evidence suggesting that the requested rate was unreasonable. We find that the district court erred and that it did not have the discretion to increase the award for attorney fees as the award “shall not exceed the amounts approved by the attorney general for the employment of outside counsel.” LSA-R.S. 44:35F. Accordingly, we reduce the award of attorney fees to a rate of $175 per hour, or $30,808.75, and we amend the October 23, 2013 judgment of the district court to so reflect.[20]
^CONCLUSION
For the foregoing reasons, we deny the plaintiffs’ Motion to File Portions of Brief under Seal. Additionally, we reverse that portion of the April 30, 2013 judgment ordering the defendants to produce:
• all resumes, CVs, or other records reviewed (online or otherwise) by one or more members of the Board or the “Presidential Search Committee” reflecting the qualifications of the 35 “active” applicants to which Mr. Chatelain referred during the Board’s March 18, 2013, regular meeting.
• all resumes, CVs, or other records reviewed (online or otherwise) by one or more members of the Board or the “Presidential Search Committee” reflecting the qualifications of the 6 or 7 applicants who, according to Mr. Cha-telain, were selected by the “Presidential Search Committee” for additional interviews or consideration^]
We amend the April 30, 2103 judgment to order the defendants to produce:
• all resumes, CVs, or other records reviewed (online or otherwise) by one or more members of the Board or the “Presidential Search Committee” reflecting the qualifications of the 4 applicants identified herein.
Furthermore, the October 23, 2013 judgment is amended so that the defendants shall pay to the plaintiffs, collectively, attorney fees in the amount of $30,808.75. We reverse that portion of the October 23, 2013 judgment ordering the defendants to pay to each of the plaintiffs a civil penalty in the amount of $100 per day, exclusive of Saturdays, Sundays, and legal public holidays, for each day commencing Wednesday, March 27, 2013, and ending on Monday, September 30, 2013. In all other respects, the judgments are affirmed. Costs of this appeal shall be split one-third each between the plaintiffs, Capital City Press, L.L.C. d/b/a The Advocate and Koran Addo; the plaintiffs, The Times-Picayune, L.L.C. and Quincy Hodges; and the defendants, Louisiana State University Board of Supervisors and Hank Danos.
MOTION TO FILE PORTIONS OF BRIEF UNDER SEAL DENIED; APRIL 30, 2013 JUDGMENT REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED; OCTOBER 23, 2013 JUDGMENT REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.
McDONALD, J., concurs.
PETTIGREW, J., concurs.

. In a related opinion, also rendered this date, we review and reverse the contempt judgment of the district court. See Capital City Press, L.L.C. d/b/a The Advocate and Koran Addo v. Louisiana State University System Board of Supervisors and Hank Danos, Chairman c/w The Times-Picayune, L.L.C. and Quincy Hodges v. Louisiana State University System Board of Supervisors and Hank Danos, Chairman, 2013-1803 c/w 2013-1804 (La.App. 1 Cir.12/30/14), 168 So.3d 669.

. Louisiana Revised Statutes 44:35A author-' izes a mandamus proceeding when any person has been denied the right to inspect or copy a record under the provisions' of the public records law.

. The Daily Reveille case went to trial on April 30, 2013, after which the district court denied the request for mandamus, specifically finding that the provisions of LSA-R.S. 44:12.1 relating to “applicants for public positions” controlled over the general provisions of LSA-R.S. 44:1 and that LSU had produced the requested information regarding all “applicants.'' The judgment in the Daily Reveille case was not appealed.

.See Capital City Press, L.L.C. d/b/a The Advocate and Koran Addo v. Louisiana State University System Board of Supervisors and Hank Danos, Chairman c/w The TimesPicayune, L.L.C. and Quincy Hodges v. Louisiana State University System Board of Supervisors and Hank Danos, Chairman, 2013 CW 0959 (La.App. 1 Cir. 7/19/13).

. The district court excluded sanctions for the period from May 23, 2013, through June 6, 2013, when its stay was in effect.

6. See Capital City Press, L.L.C. d/b/a The Advocate and Koran Addo v. Louisiana State University System Board of Supervisors and Hank Danos, Chairman c/w The TimesPicayune, L.L.C. and Quincy Hodges v. Louisiana State University System Board of Supervisors and *733 Hank Danos, Chairman, 2013-CC-1994 (La.8/23/13).

. See Capital City Press, L.L.C. d/b/a The Advocate and Koran Addo v. Louisiana State University System Board of Supervisors and Hank Danos, Chairman c/w The TimesPicayune, L.L.C. and Quincy Hodges v. Louisiana State University System Board of Supervisors and Hank Danos, Chairman, 2013 CW 1493 (La.App. 1 Cir. 9/19/13).

. Records were produced on September 16, 17, and 30, 2013.

. It is not disputed in this matter that LSU is a “public body” as defined in LSA-R.S. 44:1.

. Prior to the enactment of LSA-R.S. 44:12.1, the supreme court, in 1997, held that, under LSAR.S. 44:1 et seq. and LSA-Const. Art. XII, § 3, applications for public employment are public records. Capital City Press v. East Baton Rouge Parish Metropolitan Council, 96-1979 (La.7/1/97), 696 So.2d 562, 565. At issue in the Capital City Press case was whether the applications and resumes of applicants for the position of Assistant Director of Aviation of the Greater Baton Rouge Metropolitan Airport Authority were accessible by the press under Louisiana law. Capital City Press, 696 So.2d at 563. The supreme court recognized that access to public documents could only be denied when a law, specifically and unequivocally, provides otherwise. The court found it significant that the legislature had not provided for an exception for employment applications in Louisiana's public records law. Capital City Press, 696 So.2d at 566. The court found it clear that Louisiana citizens had not yet chosen through their legislature to recognize a general right of privacy in an application for public employment and, thus, there was no need to balance conflicting constitutional rights, as there was no right to privacy in that case. Capital City Press, 696 So.2d at 567.

. Louisiana Revised Statutes 44:31 provides:
A. Providing access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance- with the provisions of this Chapter, any person of the age of majority may inspect, copy, or reproduce any public record.
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person may obtain a copy or reproduction of any public record.
(3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.

. There were ten responses to the advertisements, which were provided to the plaintiffs on April 15, 2013.

13. The record does not contain the deposition, affidavit, or other testimony of Mr. Funk.'

. These individuals are the ones referred to in the judgment as "the 6 or 7 applicants who, according to Mr. Chatelain, were selected by the 'Presidential Search Committee' for additional interviews or consideration."

. The district court did not specifically state at the time of its ruling that the thirty-five candidates were applicants within the meaning of LSA-R.S. 44:12.1.

.In order to reverse a trial court’s determination of a fact, a reviewing court must review the record in its entirety and (1) find a reasonable factual basis does not exist for the finding, and (2) further determine the record establishes the fact finder is clearly wrong or manifestly erroneous. Stobart, 617 So.2d at 882.

. LSA-R.S. 44:32D provides:
In any case in which a record is requested and a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor. Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction.

. The record shows that The Advocate made its initial records request to LSU on February 5, 2013, a revised request on March 1, 2013, and a second revised request on March 21, 2013. LSU responded to the first request by letter on February 8, 2013, stating that no written applications had been submitted to LSU and to the extent that any responsive documents existed, they were in the custody and control of Mr. Funk who had the proprietary rights to said records. LSU responded to the second request on March 6, 2013, wherein LSU asked Mr. Addo to contact counsel to set up a convenient time to inspect all non-privileged public records. The March 21, 2013 requested was responded to on March 25, 2013, when LSU advised that it would address the request during a special meeting of the Board scheduled for March 26, 2013. On March 28-, 2013, counsel for LSU advised that LSU had no documents responsive to the request and that Dr. Alexander was the only person to have reached the status of applicant as contemplated by LSA-R.S. 44:12.1. The Times-Picayune made its public records request on March 21, 2013, and on March 26, 2013, counsel for LSU responded and advised that the Board did not have the requested records.

. Nor do we find that the actions of the defendants were arbitrary and unreasonable in protecting their right to appeal considering the procedural posture of this matter.

. Based on the above, we need not address the defendants remaining two assignments of error. Additionally, we cannot address the plaintiffs' argument regarding a 2001 settlement agreement that LSU entered into prior to the legislative enactment of LSA-R.S. 44:12.1 in 2006, as said settlement is not part of the record before us.