STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-668

JOHN T. DEVILLE, JR. AND JULIE E. DEVILLE

VERSUS

GREMILLION CORRUGATED, LLC, ET AL.

Consolidated with 23-669

GERALD FONTENOT BUILDING CONTRACTOR, LLC

VERSUS

JOHN TODD DEVILLE, JR., ET AL.

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 78,477
(consolidated with 78,779)
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

CHARLES G. FITZGERALD
JUDGE

**********

Court composed of Sharon Darville Wilson, Charles G. Fitzgerald, and Ledricka J. Thierry, Judges.

AFFIRMED.

**Jonathan T. Gaspard**
**The Gaspard Law Firm**
**313 North Main Street**
**Marksville, Louisiana 71351**
**(318) 240-7329**
**Attorney for Defendant/Appellant:**
**Gremillion Corrugated, LLC**


**Miles A. Matt**
**Matt & Allen, LLC**
**1026 St. John Street**
**Lafayette, Louisiana 70501**
**(337) 232-7580**
**Attorney for Plaintiffs/Appellees:**
**John T. Deville, Jr. and Julie E. Deville**

**FITZGERALD, Judge.**

This is an appeal from a judgment in favor of the plaintiffs, John T. Deville Jr. and Julie E. Deville (the "Devilles"), against the defendant, Gremillion Corrugated LLC ("Gremillion"), for defective roof panels.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

The Devilles entered into a contract with Gerald Fontenot and Gerald Fontenot Building Contractor LLC ("Fontenot") for Fontenot to serve as the general contractor for the construction of their new home in Ville Platte, Louisiana. Because the style of the home called for a metal roof, Fontenot directed the Devilles to Gremillion as a manufacturer and supplier of metal roofing.

The Devilles ultimately selected the "R-panel" roofing style advertised on Gremillion's website. Fontenot, in turn, ordered the R-panel materials from Gremillion. Gremillion then manufactured the metal roof panels at its facility in Mansura, Louisiana, and delivered the finished materials to the job site.

Next, Fontenot began installing the roof panels on the Devilles' home. By mid-October 2018, approximately 150 metal sheets had been installed. This is when the Devilles first noticed that the roof panels were defective: shadowing from an irregular corrugation pattern had emerged, giving their home a striped, zebra-like look. The Devilles notified Fontenot, who immediately traveled to the job site and acknowledged the defect.

Ultimately, the Devilles filed suit in redhibition against Gremillion.[1] A bench trial was held in September 2022. Two months later, the trial court issued written reasons. And three months after that, on February 10, 2023, the trial court signed a

---

[1] Fontenot was also named as an original defendant. However, the Devilles and Fontenot entered into a compromise agreement, and Fontenot was dismissed from the suit.

final judgment awarding the Devilles $62,642.00 in damages and $27,728.54 in attorney fees and court costs. Gremillion appealed.

On appeal, Gremillion asserts four assignments of error:

1.     The trial court erred in failing to find that the alleged defect in the sheet metal was an apparent defect.

2.     The trial court erred in failing to determine whether the alleged defect rendered the thing totally useless or whether the defect merely diminished the usefulness and value of the thing.

3.     The trial court erred in failing to recognize any degree of fault attributable to Fontenot.

4.     The trial court erred in rendering a judgment which amounted to a windfall in favor of [the] Deville[s].

## LAW AND ANALYSIS

### *First Assignment of Error*

Gremillion initially asserts that the trial court erred by not finding that the defect was apparent. This assignment, along with the others, implicates Louisiana law on redhibition.

To this end, La.Civ.Code art. 2520 states as follows:

The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

Importantly, La.Civ.Code art. 2521 next provides that "[t]he seller owes no warranty for defects for the things known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such

2

thing." Hence, "the plaintiff must prove that the thing sold contained a hidden defect that was not apparent upon ordinary inspection." *Hernandez v. Chisesi Investments, LLC*, 14-107, p. 6 (La.App. 5 Cir. 11/12/14), 164 So.3d 912, 917, *writ denied*, 14-2609 (La. 3/6/15), 161 So.3d 17.

Whether a defect is apparent is a finding of fact. Findings of fact are reviewed on appeal using the manifest error-clearly erroneous standard of review. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). To reverse a trial court's determination of fact under this standard, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the trial court is clearly wrong or manifestly erroneous. *Id*. The appellate court must not reweigh the evidence or substitute its own factual findings even if it would have decided the case differently. *Id*. And "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id*. at 883.

Here, the fact that the defect existed at the time of the sale is undisputed. The issue is simply whether the defect was apparent. The trial court found it was not apparent and clearly articulated the reasons for its decision:

> There is an issue of whether the defect was obvious and whether the buyer should have seen the defect prior to installation. There is no doubt that the buyer had access to the materials that was [sic] sitting on the lot prior to the installation, however this Court notes that not only did they buyer not notice the defects until the roof was partially installed but the General Contractor who installed the roof did not notice the defect until after the roof was installed. Therefore, this Court concludes that this defect was not an obvious defect which should have been discovered. It appears that only after the roof was partially put up did the inconsistent bends in the smaller corrugations become obvious as this Court observed during its physical inspection.

We now turn our attention to the record evidence. The advertised R-panel design was supposed to have four major corrugations and six minor corrugations on

each metal panel: two minor corrugations were supposed to run between each pair of major corrugations. Additionally, the major corrugations were supposed to be of the same height, and the minor corrugations were supposed to be of the same height; this would generate a symmetrical profile about the centerline of each sheet. The testimony and exhibits in evidence, however, show something entirely different: the heights of the major corrugations vary; the heights of the minor corrugations vary; and some of the minor corrugations are actually absent.

To further illustrate these deficiencies, an actual section of the sheet metal was introduced into evidence. Due to its bulkiness in handling, a scale drawing of that exhibit was also admitted. This drawing shows the heights of the major corrugations fluctuate from 1.11 inches to 1.24 inches. It shows minor corrugations of 0.12 inches, 0.10 inches, 0.11 inches, and 0.13 inches. And importantly, it shows that two of the six minor corrugations are missing.

As to the missing corrugations, the Gremillion machinery created a linear mar or burnish that obscured the defect when the roofing material was viewed prior to installation. In other words, the linear marring or burnishing created an illusion giving the impression that the corrugations were present—when in fact they were not.

In addition, the aesthetic phenomenon created by the defectively manufactured roof material is referred to as "oil canning," which is a visible and unsightly imperfection in the roof and which was witnessed by the district court judge in his onsite inspection on the second day of trial. As he put it: "this defect was not an obvious defect which should have been discovered. It appears only after the roof was partially put up did the inconsistent bends in the smaller corruptions become obvious as this court observed during its physical inspection." Significantly,

4

even Fontenot—the general contractor—failed to notice the defect until after installing more than 150 roof panels over the course of ten days.

Based on our review of the record, the trial court did not manifestly err in finding that the defect was not apparent. This assignment is therefore without merit.

***Second Assignment of Error***

Here, Gremillion asserts that the trial court erred in failing to determine whether the alleged defect rendered the thing totally useless or whether the defect merely diminished the usefulness and value of the thing under La.Civ.Code art. 2520. Because this assignment suggests that the trial court misapplied the law, the appropriate standard of review is de novo. *Evans v. Lungrin*, 708 So.2d 731 (La.1998).

In response, the Devilles argue that Gremillion is conflating the distinction between a claim in redhibition against an ordinary, innocent seller under La.Civ.Code art. 2520 and a claim against a manufacturer under Article 2545. We agree.

Louisiana Civil Code Article 2520 provides a general rule addressing a seller's warranty and redhibitory defects. It gives a buyer the right to obtain rescission of the sale if the thing sold contains a redhibitory defect. However, if the defect does not render the thing totally useless—if the defect only diminishes the thing's value— it limits the right of a buyer to a reduction of the price.

By contrast, La.Civ.Code art. 2545 provides a specific rule for particular categories of sellers, including manufacturers like Gremillion. Because Gremillion manufactured and sold the defective roof panels, the applicable law is La.Civ.Code art. 2545—not La.Civ.Code art. 2520. And Article 2545 states as follows:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price

with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.

A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.[2]

Louisiana Civil Code Article 2545 imparts on manufacturers the knowledge of redhibitory defects in their products and provides for damages which go beyond simply rescission of the sale. Since the manufacturer's knowledge is conclusively presumed, the manufacturer is deemed to be in bad faith in selling a defective product and is liable to the buyer for all damages allowed under this article. *Pratt v. Himel*, 01-1832 (La.App. 1 Cir. 6/21/02), 823 So.2d 394, *writ denied*, 02-2025 (La. 11/1/02), 828 So.2d 572.

In summary, the applicable law is La.Civ.Code art. 2545. And under this article, the trial court was not required to determine whether the defect rendered the roof panels totally useless or whether it merely diminished the product's usefulness or value. Because the trial court correctly applied the law, Gremillion's second assignment of error is without merit.

***Third Assignment of Error***

Gremillion next asserts that the trial court erred in failing to recognize any degree of fault attributable to Fontenot. Under La.Civ.Code art. 2323, the trial court must determine the degree of fault of all persons causing or contributing to the damage. Gremillion's argument is that, although Fontenot settled with the Devilles, the general contractor's fault must be assessed.

---

[2] "[A] general rule of statutory construction is that a specific statute controls over a broader, more general statute." *Capital City Press, L.L.C. v. La. State Univ. System Bd. of Sup'rs*, 13-2000, 13-2001, p. 13 (La.App. 1 Cir. 12/30/14), 168 So.3d 727, 738, *writ denied*, 15-209 (La. 4/17/15), 168 So.3d 401 (citing *Burge v. State*, 10–2229 (La. 2/11/11), 54 So.3d 1110).

6

The Devilles, on the other hand, point out that Gremillion failed to raise this issue in the trial court: Gremillion failed to plead comparative fault as an affirmative defense in its answer, and Gremillion failed to adduce any evidence of Fontenot's fault at trial. We agree.

Put simply, the issue of Fontenot's comparative fault cannot be raised for the first time on appeal. The issue is not properly before this court.

**Fourth Assignment of Error**

In this assignment, Gremillion asserts that the damages award of $62,624.00 is excessive and results in a windfall for the Devilles.

To summarize, the trial court found that the Devilles ordered an R-panel roof manufactured and sold by Gremillion, that the Devilles received a defectively manufactured product, that the Devilles would not have purchased the roofing material had they known of the defect, and that the only way to rectify the problem is by replacing the roof.

Under La.Civ.Code art. 2545, Gremillion, as the manufacturer, is deemed to know of the defect and is thus liable to the Devilles for damages and attorney fees. As to damages, "where the replacement of the roof is necessary to cure the defects, the cost of replacing the roof is a proper element of damages." *Dixie Roofing Co. of Pineville, Inc. v. Allen Parish School Bd.*, 95-1526, p. 11 (La.App. 3 Cir. 5/8/96), 690 So.2d 49, 56, *writ denied*, 683 So.2d 276 (La. 1996).

To that end, Bradley Care, who is the owner of Care's Metal Construction LLC, testified on behalf of the Devilles. Although Mr. Care was not offered as an expert, he explained that he has been in the steel erection business for twenty-two years, with the last two as owner of his own company. He testified that he provided the Devilles with a written roof-replacement estimate of $62,642.03. This estimate was admitted into evidence. Mr. Care then addressed the underlying facts in support

7

of his estimate: he discussed the process of removing and replacing the roof in sections to preserve the interior of the home. He also addressed the significant increase in material and labor prices. Importantly, Gremillion did not object to Mr. Care's testimony, including his opinions and conclusions. And Gremillion did not offer any competing evidence about the cost of roof replacement.

Nevertheless, Gremillion now argues that Mr. Care's estimate was excessive and that the trial court unduly relied on his testimony, especially considering that he was not an expert. Yet as the trial court explained: "No other testimony was presented as to the cost of replacement of the roof[.]"

In conclusion, the cost of replacing the roof is the correct measure of damages. The only evidence available to the trial court was that offered by the plaintiffs through Mr. Care. The trial court observed Mr. Care as he testified under oath and subject to cross examination. The trial court was in the best position to determine the accuracy and truthfulness of his testimony. Based on the record before us, the trial court trial did not manifestly err in its calculation of damages. Thus, this assignment of error also lacks merit.

## DISPOSITION

The trial court's judgment of February 10, 2023, is affirmed. And all costs of this appeal are assessed to the defendant, Gremillion Corrugated LLC.

**AFFIRMED.**